**PILGRIM'S PRIDE CORPORATION
and Lawrence Simmons,
Relators,**

v.

**The Honorable Jim N. THOMPSON, Presiding Judge, 62nd Judicial District, Hopkins County, Texas, Respondent.**

No. 12–91–00243–CV.

Court of Appeals of Texas,
Tyler.

Oct. 18, 1991.

Gregory D. Smith, Tyler, for relators.

William L. Peek, Texarkana, Coy Johnson, Sulphur Springs, Marc H. Richman, Dallas, for respondent.

PER CURIAM.

This is an original mandamus proceeding by which relators Pilgrim's Pride Corporation and Lawrence Simmons seek to compel respondent Judge Jim Thompson to vacate his order of August 27, 1991, striking all of relators' witnesses designated after April 20, 1990.[1] Judge Thompson entered the order at issue after entertaining the motion of real parties in interest Paul David Carr, Bradley Clint Carr and Charlene Carr to strike relators' supplementations to their interrogatories. At the time this original proceeding was brought, trial was set for September 3, 1991.

In the underlying action, the Carrs have sued relators for personal injuries arising out of a traffic accident in which Lawrence Simmons, while on duty as a truck driver for Pilgrim's Pride Corporation, rear-ended Paul and Bradly Carr's vehicle. Early in 1990, the Carrs sent relators a set of inter-

---

1. At least 13 of relators' designated expert witnesses and approximately 24 designated fact witnesses were struck.

rogatories which included the following two questions:[2]

No. 6 *Identify*[3] all person [sic] who witnessed the occurrence, came upon the scene of the accident after it occurred, or have knowledge of any relevant facts relating to the occurrence which is the basis of this lawsuit, the cause thereof, or the damages resulting therefrom.

No. 7 State the name, address, and qualifications of each expert whom you expect to call as an expert witness at the trial of this case, the subject matter concerning which the expert expects to testify, and attach a copy of any report, including factual observations and opinions, which had been prepared by any such expert.

Relators timely answered interrogatory number seven as follows: "No expert witness has been contacted at this time, but Defendant reserves the right to call all of Plaintiffs' health care providers as experts, as well as any other expert witness later named by any defendant or plaintiff in discovery responses, including but not limited to...." Relators then list 32 physicians' names, addresses and, for most, the phone numbers. At the bottom of the list of physicians, the following notation appeared:

See Plaintiffs' medical records for the subject matter, observations, and opinions of these experts.

The experts listed above may be called upon to testify as to the nature and extent of their participation and provision of health care services or health care treatment of any kind or nature to Plaintiffs, including the Plaintiffs' condition, complaints, nature and extent as well as the character of such treatment, the costs and expenses associated with such treatment, their initial diagnoses or diagnoses [sic] of Plaintiffs' conditions or

alleged ailments as well as their prognosis for Plaintiffs' future conditions. Their testimony will include but not otherwise be limited to, any matter or fact associated in any way with his physical condition as it was known to them or related to them by Plaintiffs or others at any time before or after the incident made the basis of this claim.

Relators also listed the following fact witnesses in response to interrogatory number six:

*Fact witnesses listed by both Pilgrim and Simmons:*

—All three Plaintiffs

—The Department of Public Safety investigating officer

—Ambulance personnel whose names are unknown

—Herb Seale with Pilgrim's Pride Corporation

—Plaintiffs' investigators whose names are unknown

—Various employees of Crawford and Company with whom Plaintiffs' attorneys have dealt

—Plaintiffs' experts whose names are not yet known

—Plaintiffs' attorneys

—Defendants' attorneys

—All of the expert witnesses to be named by Plaintiffs in answers to interrogatories

—All of the expert witnesses named in answer to interrogatory #7 (experts list) or later named in discovery responses by either defendant as expert witnesses

*Fact witnesses listed by Pilgrim but not Simmons:*

—Lawrence Simmons (Def)

*Fact witnesses listed by Simmons but not Pilgrim:*

—Don McElhaney, Live Haul Manager, Pilgrim's Pride Corp.

---

2. These two interrogatories appear as interrogatory numbers "2" and "4" in the set of interrogatories propounded to relator Lawrence Simmons.

3. The following definition was given at the beginning of the interrogatories:

"*Identify*" or "*identity*" when referring: (a) to a person means to state a present or last known address, telephone number, title or position, and place of employment, and, if previously employed by you, the date he or she was hired and the date he or she was terminated, if applicable....

—Larry Wayne, Assistant Live Haul Manager, Pilgrim's Pride Corp.

—The driver of the truck which ran off the road in front of Plaintiffs

—All of the expert witnesses named in answer to interrogatory # 4 or later named in discovery responses by either defendant as expert witnesses.

Thereafter, relators supplemented their responses in letter form by designating additional fact and expert witnesses on April 16, July 1, July 9, July 11, July 30, August 2, and August 23 of 1991. Judge Thompson struck all of the witnesses designated therein. The fact witnesses struck by the trial court's order fall into six separate categories distinguished by the quantity of information provided for each:

## I. FACT WITNESSES DESIGNATED BY NAME, TITLE AND PLACE OF EMPLOYMENT:

*April 16, 1991 designation:*

—**Harold Hensley,** Fleet Safety Director, Pilgrim's Pride Corp., Pittsburg, Texas

—**Ken Pilgrim,** Transportation Manager, Pilgrim's Pride Corp., Mount Pleasant, Texas

—**Barry Larson,** Fleet Shop Manager, Pilgrim's Pride Corp., Mount Pleasant, Texas

—**Larry Wayne,** Live Haul Truck Manager, Pilgrim's Pride Corp., Mount Pleasant, Texas

*July 11, 1991 designation:*

—**Charlie Elwonger,** Sheriff, Camp County, Texas

## II. FACT WITNESSES IDENTIFIED BY AT LEAST NAME AND ADDRESS:

*July 30, 1991 designation:*

—**Gary Bryant,** Box 1119, Ft. Smith, AR 72902; 501/783–4186

*August 23, 1991 designation:*

—**Marc H. Richman,** Legal Arts Center, 304 S. Record St. Suite 200, Dallas, TX 75202

—**Ben M. Barton,** Legal Arts Center, 304 S. Record St. Suite 200, Dallas, TX 75202

## III. FACT WITNESSES IDENTIFIED BY NAME AND EMPLOYMENT ONLY:

*April 16, 1991 designation:*

—**Don McLehenny,** Pilgrim's Pride Corporation

*July 11, 1991 designation:*

—**Dewayne Gilbreath,** Pilgrim's Pride Corp., DeQueen, Arkansas 71832

—**Thomas Cravey,** Pilgrim's Pride Corp., Mt. Pleasant, Texas 75455

—**Bill Barenkamp,** Pilgrim's Pride Corp., Mt. Pleasant, Texas 75455

—**Jerry Sparks,** Pilgrim's Pride Corp., Mt. Pleasant, Texas 75455

—**Cliff Jones,** Pilgrim's Pride Corp., Mt. Pleasant, Texas 75455

## IV. FACT WITNESSES IDENTIFIED BY NAME ONLY:

*April 16, 1991 designation:*

—**Kyle Thomas**

—**Imogene Simmons,** Defendant's wife

—**Steven Spencer**

—**Mike Murphy,** private investigator

*July 11, 1991 designation:*

—**Frank Walton,** address unknown

—**Mike Meek,** address unknown

## V. FACT WITNESSES DESIGNATED BY TITLE AND PLACE OF EMPLOYMENT ONLY:

*August 2, 1991 designation:*

—Custodian of records for Hopkins County Memorial Hospital

—Custodian of records for Dr. Larry Landers

—Custodian of Records for Dr. Jerry Bennett and Dr. Claude Reynolds

—Custodian of Records for Nicholson Yamaha, Mt. Pleasant, Texas

## VI. FACT WITNESSES IDENTIFIED BY CROSS–REFERENCE:

*April 16, 1991 designation:*

—All persons listed by Defendants in previous answers to discovery.

—All persons listed by Plaintiff as having knowledge of relevant facts.

*August 2, 1991 designation:*

—All persons whose depositions have been taken prior to trial

—All persons listed by the Third–Party Defendant

Expert witnesses struck by the trial court's order fall into four separate categories distinguished by the quantity of information provided for each expert witness:

## I. EXPERT WITNESSES IDENTIFIED BY MORE THAN NAME, ADDRESS AND PHONE NUMBER:

*April 16, 1991 designation:*

—**A.O. Pipkin,** Accident Reconstruction Lab, Inc., 9712 Skillman St., Dallas, TX 75243; 214/343–8700 [indicates place of employment]

—**Dr. Wayne A. Knoblauch,** 145 Brookway, Ithica, N.Y. 14850; (607) 255–1599; [Curriculum Vitae was attached; deposed, although not prepared for deposition]

—**Dr. Jon T. Ledlie,** 1100 East Lake Street, Tyler, TX 75701; no phone number given; [deposition taken]

—**Dr. Larry Landers,** 703 South Hill, Winnsboro, TX 75494; no phone number given [Deposition taken; also designated in original response to interrogatory]

*July 30, 1991 designation:*

—**George Teer,** Haag Engineering Co., P.O. Box 814245, Dallas, TX 75381; 214/ 247–6444; [indicates place of employment]

*August 2, 1991 designation:*

—**Robert Maynard,** CARS, Inc. 3663 Brookland Ave., Fort Worth, Texas; no phone or zip code; [indicates place of employment]

## II. EXPERTS IDENTIFIED BY NAME, ADDRESS AND PHONE NUMBER:

*July 9, 1991 designation:*

—**Warren F. Gorman, M.D.,** 1775 Diamond St. # 3336, San Diego, CA 92109

*August 2, 1991 designation:*

—Dr. Gorman's phone number was provided: (602)948–5330

## III. EXPERTS IDENTIFIED BY NAME AND ADDRESS:

*April 16, 1991 designation:*

—**Dr. James Shadduck,** 4201 Spring Valley Road, Ste. 1100, Dallas, Texas 75244

—**Dr. Blair MacBeth,** 410 Quitman, Pittsburg, Texas (no zip provided)

*July 1, 1991 designation:*

—**Dr. Ayub Khan Ommaya,** 8006 Glenbrook Road, Bethesda, Maryland 20814

—**Dr. Michael E. Howard,** 3434 Canal Street, New Orleans, LA 70119

*August 2, 1991 designation:*

—**Dr. Clayton E. Whitney,** 908 Hospital Drive, Tyler, Texas 75702; (telephone # unknown)

## IV. EXPERTS DESIGNATED BY CROSS-REFERENCE:

*April 16, 1991 designation:*

—All experts previously designated by either of these defendants in previous discovery answers

—Any and all experts designated by Plaintiff

—Any and all physicians and medical practitioners who have ever treated Plaintiffs, Paul David Carr or Bradley Clint Carr

—Any and all experts whose depositions have been taken in this case

*August 2, 1991 designation:*

—All experts designated by Third–Party Defendant

On August 21, 1991, the Carrs filed a motion to strike the relators' supplementations to interrogatories. As grounds for their motion, they enumerated a variety of defects in the supplemental responses including the facts that the supplemental responses: (1) did not provide crucial portions of the information requested in the interrogatories, (2) were not signed by the parties and (3) were not submitted in proper form as required by the TEXAS RULES OF CIVIL PROCEDURE. Judge Thompson entertained the motion on August 27, 1991. At the hearing, the Carrs' lawyers introduced a series of 27 letters reflecting communications between the Carrs' and the relators' lawyers. These letters illustrated the difficulties that the Carrs had experienced in trying to obtain discovery from the relators. Relators' counsel, in turn, argued that they had supplied what information was available to them.

Following arguments, the trial court entered the following order:

This 27th day of August, 1991, came on to be heard and considered Plaintiff's

motion to strike witnesses submitted by the Defendant Pilgrim's Pride Corporation and Defendant Lawrence Simmons. Plaintiffs appeared by and through their attorneys of record and Defendant Pilgrim's Pride Corporation, Lawrence Simmons appeared by and through their attorney of record and Defendant American Industries Logistics, Inc., [not a party to this mandamus proceeding] appeared by and through its attorney of record. All parties announced ready and the Court proceeded to hear argument and evidence regarding Plaintiff's motion. The Court is of the opinion and finds that Plaintiff's motion should be granted.

It is therefore ordered, adjudged, and decreed that Defendant's witnesses named after April 20, 1990 are hereby stricken and not permitted to testify in the above styled and number cause.

Signed and entered this 27th day of August, 1991.

■ A writ of mandamus is an extraordinary remedy, and it will issue only to correct a clear abuse of discretion or a violation of a duty imposed by law where there is no adequate, alternative remedy at law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). As we noted in *Mother Frances Hospital v. Coats*, 796 S.W.2d 566, 569 (Tex.App.—Tyler, 1990, writ denied), "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles ... whether the act was arbitrary or unreasonable." *Mother Frances Hospital*, 796 S.W.2d at 569, *quoting, Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1986). *Also see Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990).

In recent months, Texas courts have issued a number of opinions expressing concern that certain sanctions ordered pursuant to Rule 215 of the TEXAS RULES OF CIVIL PROCEDURE may eviscerate a party's claim or defense and result in the deprivation of a litigant's constitutional right to due process of law. *See Transamerican Natural Gas v. Powell*, 811 S.W.2d 913 (Tex.1991); *Braden v. Downey*, 811 S.W.2d 922 (Tex. 1991); *Hanley v. Hanley*, 813 S.W.2d 511 (Tex.App.—Dallas 1991, no writ). Because these cases generally involve the striking of pleadings, the dismissal of a case or the entry of a default judgment as sanctions, courts have labelled them "death penalty" cases.

■ This, however, is not a death penalty case. Despite the trial court's extensive strikes, relators have numerous fact and expert witnesses at their disposal. Although Judge Thompson's order was not fatal to relators' case, there can be no doubt that his sweeping use of sanctions, if allowed to stand, will have a negative impact on relators' opportunity to present its case. In *Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984), the Supreme Court stated that appeal was not an adequate remedy where the party would first be required to try a lawsuit debilitated by improper discovery rulings which would in all likelihood be overturned on appeal. Given the immediate, crippling effect of Judge Thompson's order on relators, we believe they have no adequate remedy at law.

The Texas Supreme Court's decision in *Transamerican* established new considerations for mandamus review of death penalty cases, and it set forth the following standards for assessing the propriety of discovery sanctions imposed by a trial court:

First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some of the responsibili-

ty for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote such compliance.

These standards set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion. The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process ... Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.

*Transamerican*, 811 S.W.2d at 917.

■ Having determined that relators have no adequate remedy at law, we must next determine whether the order entered by respondent constitutes a clear abuse of discretion. We will apply the *Transamerican* standards to the instant case. First, we must determine whether a direct relationship exists between the alleged discovery violation and the sanctions imposed. Having examined the supplementation of the specific witnesses in controversy here, we find that almost all of the information provided on witnesses designated after April 20, 1990 is deficient in some respect; however, the degree of the deficiencies varies from witness to witness. The applicable rule governing a failure to properly supplement discovery requests is TEX. R.CIV.P. 215(5) which provides:

A party who fails to respond to or supplement his response to a request for discovery *shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response* or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

(Emphasis added.)

Given the mandatory language of this provision, we find that the trial court had no alternative but to sanction of striking witnesses for whom insufficient information was provided.

■ The second step of the *Transamerican* analysis requires that we determine whether the sanctions imposed were excessive. As stated in *Transamerican*, a sanction order imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. We find that the sanctions levied on relators in the instant case were excessive.

Although Rule 215(5) gave Judge Thompson no discretion to determine the *type* of sanction imposed, Judge Thompson did dictate the degree to which he would impose the sanction. From the record we find no compelling reason that would support Judge Thompson's decision to strike *all* of relators' supplemented witnesses. Nor is there any indication that after analyzing the relators' letters supplementing discovery, Judge Thompson made any effort to distinguish between minor and substantive violations of the discovery rules. Such distinctions would have enabled him to strike those witnesses whose opinions, information and testimony relators, in effect, were hidden from the Carrs while allowing witnesses whom relators had sufficiently disclosed to remain available to testify. Only after the severity of the violation has been assessed can a trial court mete a just sanction.

We find Judge Thompson's order excessive in the following respects:

1. **Category I Fact Witnesses:** The trial court improperly struck the five fact witnesses in category I. The title and place of employment supplied for each witness was sufficient to facilitate the Carrs' contact with them as well as provide them with some idea as to the nature of their testimony. Furthermore, fact witness Larry Wayne had been designated by relator Lawrence Simmons in his initial response to the Carrs' interrogatories.

2. **Category II Fact Witnesses:** The trial court improperly struck the three witnesses listed in category II since the name, address and phone number had been provided for the first of these witnesses, and the other two were designated prior to April 20, 1990.[4]

3. **Category III Fact Witnesses:** The trial court improperly struck the fact witnesses designated in category III for the following reasons: (a) although the information supplied for fact witness Don McLehenny was deficient, McLehenny was initially designated as a witness prior to April 20, 1990, and therefore, should not have been struck; (b) although the designation for each of the remaining five witnesses in this category was technically deficient in that relators failed to provide a phone number and the position held by each witness, as a practical matter, enough information was provided for the Carrs to locate these witnesses with relative ease.

4. **Category V Fact Witnesses:** The trial court improperly struck the witnesses listed in category V. The purpose of designating a custodian of records is self-explanatory. Furthermore, since more than one person often operates as a custodian of records for a business, relators may not have known which custodian would be present to testify on each entity's behalf. Listing the witness' title and place of employment under these circumstances was sufficient.

5. **Category VI Fact Witnesses:** The trial court improperly struck the following designations under category VI:

   —All persons listed by Plaintiff as having knowledge of relevant facts

   —All persons whose depositions have been taken prior to trial.

   The information for these two designations was readily available to the Carrs.

6. **Category I Expert Witnesses:** Witnesses Ledlie and Landers should not have been struck. The Carrs' lawyer had been present at the deposition of Dr. Ledlie on April 15, 1991; they were therefore aware of his area of expertise and the probable nature of his testimony. Witness Landers had been designated by the Carrs prior to April 20, 1990, and had been deposed by the Carrs' lawyer on March 26, 1991.

7. **Category IV Expert Witnesses:** Except to the extent it applies to Dr. Wayne A. Knoblauch who was correctly struck, the designation "Any and all experts whose depositions have been taken in this case" should not have been struck. Instead, additional experts, if any, included by this designation should have been allowed to testify to matters disclosed at their depositions since to that extent the Carrs were aware of their opinions and the nature of their testimony.

For the reasons enumerated above, we find that Judge Thompson clearly abused his discretion by imposing sanctions that were broader in scope than necessary to satisfy their legitimate purpose. Therefore, the writ of mandamus is conditionally granted. We are confident, however, that Judge Thompson will vacate his order of August 27, 1991 to the extent it pertains to the striking of certain of relators' witnesses. Our writ will issue only in the event he fails to do so promptly.

---

4. The issue of whether designated fact witnesses Marc Richman and Ben Barton could actually be called as witnesses at trial is not before us and, therefore, will not be addressed.