**Don M. SMART, Appellant,**

v.

**Richard L. WINSLOW, M.D., Appellee.**

**No. 07–92–0112–CV.**

Court of Appeals of Texas,
Amarillo.

Dec. 31, 1993.

Law Offices of Windle Turley (David R. Weiner), Dallas, for appellant.

Gwinn & Roby, Charles G. Bell and M. Steve Nagle, Dallas, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Judge.

Aggrieved by the instructed verdict rendered in his medical malpractice action against Dr. Richard L. Winslow, Don M. Smart contends with nine points of error that the trial court erred in excluding all the testimony and quashing the depositions of his designated expert witnesses and instructing a verdict for Winslow. Agreeing that the instructed verdict for abuse of discovery was extreme, we will reverse the judgment and remand the cause.

## BACKGROUND

Underlying this appeal is a medical negligence action in which Smart, who is both an attorney and a medical doctor of the same school of medicine as Winslow, alleged Winslow misdiagnosed his vision problem which resulted in untreated glaucoma, blindness and permanent disability. It is undisputed that such an action requires expert medical testimony in order to present the claim to the court. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965).

During the course of discovery, on 9 August 1989, Winslow requested that Smart respond to certain interrogatories. The two interrogatories around which the present controversy centers read:

*INTERROGATORY NO. 10:* Identify (name, address and telephone number) each and every person having knowledge of relevant facts in this case.

*INTERROGATORY NO. 11:* As to each expert whom you will or may call at trial or whom you consulted but cannot now positively state will not be called at trial, provide the following information:

   a.   Identify (name and address) each;

   b.   State each's area of expertise;

   c.   State each's opinions related to this case; and

   d.   State the basis of each such opinion.

*NOTE:* If the work product of any expert for consultation purposes only forms any part of the basis of an opinion of an expert whom you may call as a witness, then you must identify each consulting expert in your answer to this Interrogatory.

The initial response to the interrogatories, made on 15 September 1989 by Smart's counsel and verified by Smart, provided this answer to interrogatory number 10: "Plaintiff; Defendant; Ronald L. Fellman, M.D. (360–0000); William L. Hutton, M.D. (692–6941); Jacob Wilensky, M.D. ((312) 996–7030). All addresses previously given." The response to interrogatory number 11 was: "Plaintiff has not yet determined which doctors he intends to call as expert witnesses. As soon as he has made that determination, Interrogatory No. 11 will be answered."

On 22 February 1991, Smart's counsel supplemented, without verification, the responses as follows:

*SUPPLEMENTAL ANSWERS NO. 10 AND 11:*

See attached list marked Exhibit A for persons with knowledge of relevant facts and potential expert witnesses.

Each of the following expert witnesses are medical doctors and have received medical training regarding vision, tests for vision, and the medical standard of care regarding Dr. Winslow's treatment of Dr. Smart.

The basis of the opinions of these medical doctors, besides Dr. Smart, is that they have examined me and some of them have treated me for my current medical condition, a medical condition for which Dr. Winslow was supposed to have examined

and treated me for. These medical doctors may testify regarding the standard of care and any breaches of the standard of care and causation, and future and past medical care.

The list of the potential expert witnesses consisted of the names, addresses and telephone numbers of Don M. Smart, M.D.; William L. Hutton, M.D.; Ronald L. Fellman, M.D.; Jacob T. Wilensky, M.D.; Louis J. Girard, M.D.; Charles R. Moore, M.D.; John M. Haley, M.D.; and Richard Winslow, M.D. Of the doctors listed, the record contains depositions from Dr. Smart, Dr. Winslow, and Dr. Hutton, and reveals that the deposition of Dr. Wilensky was quashed.

By a 25 February 1991 letter, Winslow's attorney notified Smart that he found the supplementation to be "deficient in that they do not properly respond to interrogatory # 11 by stating their specific opinions in this case." The letter requested notice of whether Smart would "comply with [the] previous discovery requests," or whether it would "be necessary ... to file a motion." No motion to compel more complete answers was filed.

Specifying a 16 July 1991 letter to be "intended as formal supplementation to ... interrogatories," Smart's counsel provided Winslow the name, address and telephone number of William H. Boothe, M.D. The letter read, in pertinent part:

He will state his opinion relative to this case including that taking applanation tensions without using fluorescein does not meet the standard of care for Dallas County, Texas and that a competent ophthalmologist should be able to recognize an advanced glaucomatous cup-disc ratio. The basis of such opinion is his training, experience and research that he has performed.

Doctor Boothe was later deposed, and that deposition is in the record before us.

On 8 October 1991, Smart further supplemented his list of designated experts with the names Cal Fercho, M.D., and E. Reed Gaskin, M.D., and their respective addresses. No mention was made regarding the substance of their testimony; however, notice of their respective video depositions upon written questions was presented the same day, along with an attachment of the written questions.

After a series of postponements in established discovery deadlines, the trial court finalized the completion of discovery and trial dates by its 9 September 1991 order. All discovery was to be completed by 19 October 1991; the cause would proceed to trial by jury on 18 November 1991.

Complaining that the depositions of Dr. Fercho, scheduled for October 21, Dr. Gaskin, scheduled for October 18, and Dr. Wilensky, scheduled for October 18, were conflicting and untimely in light of the court's order, Winslow sought to have them quashed. On 17 October 1991, visiting judge Ben Martinez ordered the quashal of depositions of Dr. Fercho, Dr. Gaskin, and Dr. Wilensky. Smart's request for reconsideration of the quashals was denied.

The cause proceeded to trial on 19 November 1991. Smart began his case by testifying in his own behalf. He testified to his background and certification in ophthalmology, and began testifying about the condition of glaucoma in general. At this point, Winslow's attorney objected that Smart had been designated only as a fact witness and had "not been properly designated as an expert witness." Counsel further explained that although Smart had been designated as an expert, it was done by "unsworn supplemental answers to interrogatories." After some discussion, the trial court determined, without a ruling, that verification was not necessary. *See Circle Y of Yoakum v. Blevins,* 826 S.W.2d 753, 756 (Tex.App.—Texarkana 1992, writ denied); *Jones v. Kinder,* 807 S.W.2d 868, 872 (Tex.App.—Amarillo 1991, no writ).

Second, counsel objected that since the supplementation to the 1989 interrogatories was not made until 1991, the designation was not made as soon as practicable. The court overruled this objection, and stated the court would "allow him to testify as an expert." However, the court inquired, "[I]n the supplementation what areas did he designate himself?" to which Winslow's counsel replied:

MR. BELL: Third objection, defendant objects to any attempt of Dr. Smart to

offer testimony for the reason that interrogatories specifically inquired into the specific opinions held and the bases for those, and it's the position of the defendant that that was not adequately responded to.

After some discussion concerning the supplementation, Winslow's objection was broadened to encompass all experts designated by Smart. The objection then made was:

MR. BELL: * * * Defendants object to Dr. Smart offering any expert testimony for the reason that there has been no proper response to the interrogatories propounded with respect to expert witnesses.

In response to the objection, Smart's counsel submitted that the response was "adequate, that the doctors have treated him, and that they will testify concerning that treatment." The court then determined Smart could "not testify as an expert since there's been no proper supplementation pursuant to the interrogatories."

The court suggested that if Smart wished to make a bill of exception, that he do so in summary form without the necessity of questions and answers. That matter being disposed of, Smart's counsel sought to call doctors Boothe and Hutton. Winslow's counsel objected to the introduction of their testimony.

The court, momentarily distracted, reviewed the supplemental answer designating Fercho and Gaskin, and stated, "Same problem. Improper supplementation, since they've asked for the opinion and the basis of their opinion." Seeking to clarify the court's ruling, Smart's counsel prompted the following:

MR. JEWELL: Just so I can get the ruling on—make a record of the ruling. Your ruling will apply to Dr. Smart, Dr. Hutton, Dr. Fellman, Dr. Wilensky has been withdrawn, Dr. Girard, Dr. Moore, Dr. Haley, Dr. Winslow, Dr. Boothe. And Dr. Boothe—you've already ruled out Dr. Fercho and—

THE COURT: Sir, all I'm saying is as each witness you would like to call them, the Court will rule. But the Court finds that by your supplementary response to the interrogatories, you have not designated except the names and address of two

people, and you did not designate what their opinion would be, unless there's further supplementation that has not been shown to the Court.

MR. JEWELL: Then at this time, Your Honor, the plaintiff would ask leave to amend and supplement their answers to interrogatories.

THE COURT: The only way you can do that, sir, is to show good cause.

The court determined there was not good cause to allow supplementation.

Winslow contended that although the first supplementation (22 February 1991) fully apprised him that the doctors would testify regarding the standard of care and any breaches of the standard of care and causation of past and future medical expenses, it was insufficient because it did not specifically state what those opinions would be. However, as Smart pointed out, and Winslow conceded, several of the doctors had been fully and thoroughly deposed.

The court then interposed these comments:

Sir, under the law you have to be specific in your answers to interrogatories and state what the opinions are and give supplementation; otherwise, the Court cannot allow the testimony.

Yet, regarding Dr. Boothe, the court stated that he might be excepted from the ruling because the letter stated it was to be considered as formal supplementation. Still, after a discussion during which the court's attention was directed to *Stiles v. Royal Ins. Co. of America,* 798 S.W.2d 591, 596 (Tex.App.—Dallas 1990, writ denied), where it was stated that proper identification of a witness "should be done not merely by a letter to counsel ... but by proper answer to the interrogatory filed ...," the court sustained the objection as to Dr. Boothe "based on this case."

Thereupon, the court observed, sua sponte:

Since obviously this is a medical negligence case in which—or alleged medical negligence case in which there is a necessity, do you not agree, of expert testimony? Do you not agree that there's a necessity

of expert testimony? I don't think at this point in time the plaintiffs have any experts that they can offer.

MR. JEWELL: I must admit you have devastated my case, Your Honor.

Then, further responding to Winslow's ensuing motion for instructed verdict, Smart stated, "We'll use their experts." The court sustained Winslow's objection to this procedure wherein Winslow contended there was a lack of supplementation in this arena as well. The court granted the instructed verdict against Smart and discharged the jury.

## POINTS OF ERROR

Perfecting this appeal from the instructed verdict, Smart presents nine points of error. He contends the trial court erred in (1)–(4) striking all of his expert testimony, (5) granting an instructed verdict before he rested his case, (6)–(8) quashing the depositions of three expert witnesses, and (9) committing cumulative error in quashing expert depositions and striking all expert testimony.

In pursuing his initial contention, expressed in his first four points, that the trial court erred in striking all of his expert witnesses, Smart advances four reasons. They are that (1) the discovery sanction did not follow established criteria for its imposition, (2) the witnesses had been properly identified in response to interrogatories, and (3)–(4) the striking and ensuing instructed verdict violated due process and due course of law protections.

## DISCOVERY

Certain rules were promulgated to authorize and control discovery, the whole purpose of which is to allow the parties to obtain the fullest knowledge of issues and facts prior to trial. *Gutierrez v. Dallas Independent School Dist.*, 729 S.W.2d 691, 693 (Tex.1987). Operation of the rules imposes upon a party the duty to supplement discovery responses if that party knows the answer was incomplete when made, is no longer true, or when the failure to amend would be misleading. Tex.R.Civ.P. 166b(5)(a).

## SANCTIONS

A trial court may impose sanctions on any party who abuses the discovery process, *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986), which includes the failure to properly supplement responses to discovery. Tex.R.Civ.P. 215. The legitimate purposes of discovery sanctions are to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d at 840.

Although the choice of sanctions is left to the sound discretion of the trial court, the applicable rule requires that any sanctions imposed must be just. Tex.R.Civ.P. 215(2)(b). Whether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. Second, just sanctions must not be excessive. *Transamerican Natural Gas v. Powell*, 811 S.W.2d 913, 917 (Tex.1991).

With respect to the first standard, it is observed that to be just, the sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party, and must be visited upon the offender, whether it be counsel, the party, or both. The trial court must make some attempt to determine the offending party. *Id.*

Regarding the second standard, it is noted that the sanction imposed should be no more severe than necessary to satisfy its legitimate purpose. The court must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.*

## IMPOSITION OF SANCTIONS

Although the trial court may consider the entire record in assessing sanctions, *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), it is at once obvious that the court struck all of Smart's expert testimony by the mechanistic application of the sanction authorized by rule 215(5), Texas Rules of Civil Procedure, without considering whether the offender was Smart, his attorney, or both.

Despite Winslow's argument that Smart, a licensed attorney, represented himself at various times throughout the litigation, even at times when he had counsel of record, there is no indication that the court gave any thought of determining to whom the offensive conduct was attributable. Absent any showing that Smart was guilty of the offense apart from having entrusted his legal representation to counsel, he should not be punished for counsel's misconduct, if any. *Transamerican Natural Gas v. Powell,* 811 S.W.2d at 917. To punish Smart for his counsel's misconduct is unjust. *Ogunboyejo v. Prudential Property and Cas. Co.,* 844 S.W.2d 860, 863 (Tex. App.—Texarkana 1992, writ denied).

■ In testing the court's sanction by the second standard set forth in *Transamerican,* it is noticed at the outset that the sanction was so severe that it precluded presentation of the merits of Smart's cause, a sanction which should not be assessed in the absence of a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Transamerican Natural Gas v. Powell,* 811 S.W.2d at 918. However, Winslow represents that this is not a death penalty case, as that term has been used since the rendition of *Transamerican,* because it did not result in a default judgment or the striking of plaintiff's claims. The reasons are two-fold why we disagree.

■ First, the exclusion of evidence has been determined to be an extreme penalty just as striking pleadings, dismissal, and default. *U.S. Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). Second, the exclusion of the testimony "devastated" Smart's case and resulted in his losing the opportunity to have his claims adjudicated on their merits. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 850 (Tex.1992); *Transamerican Natural Gas v. Powell,* 811 S.W.2d at 918; and *Matsushita Elec. v. McAllen Copy Data,* 815 S.W.2d 850, 854 (Tex.App.—Corpus Christi 1991, writ denied).

■ Then, the question is whether the trial court abused its discretion in imposing the severe sanction by acting without reference to any guiding rules and principles.

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d at 241. One of the guiding principles is that death penalty sanctions should not be used to deny a trial on the merits without first considering whether lesser sanctions are adequate to seek compliance, deterrence and punishment of the offender. "The punishment should fit the crime," *i.e.,* the sanction should "be no more severe than required to satisfy legitimate purposes." *Chrysler Corporation v. Blackmon,* 841 S.W.2d at 849.

■ Nevertheless, Winslow insists that the sanction of excluding the expert testimony was automatic. In doing so, he relies solely on authority for the imposition of sanctions where there has been a complete failure to either identify or timely supplement requests for identification. That is not the situation we review. In the present instance, Smart attempted to comply with the rules by timely supplementing his answers to interrogatories, and the trial court did not express an opinion, nor does the record support the conclusion, that Smart was attempting to thwart Winslow's efforts at discovery. *See Hogan v. Beckel,* 783 S.W.2d 307, 310 (Tex. App.—San Antonio 1989, writ denied). Indeed, with respect to his own testimony, Smart had timely identified himself and, albeit his supplementation was found not "proper," his personal knowledge had been communicated to Winslow through his pleadings and his deposition. Under these circumstances, it is recognized that the constraints of rule 215(5), *supra,* may permit testimony by the party, *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex.1992), even though a proper discovery request was not accurately or completely answered. *Id.* at 97 (Cornyn, J., dissenting).

Although the description of the testimony to be presented by Smart's designated experts was not detailed, it undoubtedly was an effort to comply. *Cf. Chapman v. Paul R. Wilson, Jr., D.D.S.,* 826 S.W.2d 214, 216 (Tex.App.—Austin 1992, writ denied) (responses of "findings can be found in the records which has (sic) been previously provided," and "findings have been previously provided," were found to be grossly inadequate to provide the information requested). At least, the supplementation prompted the

depositions of the experts taken before the court's cutoff date for discovery, thereby providing Winslow with their opinions and the bases for them, the lack of which in the prediscovery supplementation caused the court to exclude their testimony at his urging.

■ In regard to deficiencies similar to those pointed out in Smart's responses, it has been held that even if responses to interrogatories are vague or even evasive or nonresponsive, the court should first consider the imposition of lesser sanctions. *U.S. Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d at 673. Here, when the court articulated the shortcomings in Smart's supplementary response to the interrogatories, he asked for leave to amend and supplement his answers, but the court refused to grant leave and imposed the extreme sanction of an instructed verdict. It is recognized that in lieu of a sanction excluding all evidence not properly identified in discovery, the court has the discretion to postpone the trial and impose an appropriate sanction, including compensation to the non-offending party for wasted expense in preparing for trial, unless the delay would prejudice the non-offending party. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 915 (Tex.1992). The lesser sanction was not considered by the court.

■ Treating Dr. Boothe separately, the court, sustaining Winslow's objection predicated on the statement in *Stiles v. Royal Ins. Co. of America,* 798 S.W.2d at 596, excluded the doctor's testimony because he was designated by letter. Not only was Winslow's objection more a matter of form over substance, but its basis was dictum in the *Stiles* opinion. We are not prepared to say that supplementation of discovery by letter is such flagrant bad faith or callous disregard for the responsibilities of discovery that would justify the extreme sanction of an instructed verdict. *See Transamerican Natural Gas v. Powell,* 811 S.W.2d at 918; *accord Pilgrim's Pride Corp. v. Thompson,* 818 S.W.2d 185, 191 (Tex.App.—Tyler 1991, orig. proceeding) (trial court abused its discretion by excluding testimony of witnesses designated by letters, because the sanctions were broader than necessary to satisfy their legitimate purpose).

## DUE–PROCESS REQUIREMENTS

■ The imposition of severe sanctions is limited not only by the *Transamerican* standards, but by constitutional due process, which limits the power of courts, even in aid of their own valid processes, to terminate an action without affording a party the opportunity for a hearing on the merits of his cause. Although a party may so abuse the discovery process as to justify a presumption that his claim or defense lacks merit, the severe sanction which precludes presentation of the merits of the cause should not be assessed in the absence of the party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Transamerican Natural Gas v. Powell,* 811 S.W.2d at 917–18.

## CONCLUSION

Our review of the entire record, and application of the legal principles cited, leads us to the conclusion that the trial court observed neither the *Transamerican* guidelines nor due process requirements in imposing the severe sanction of an instructed verdict. The failure of the trial court to analyze or apply the law correctly constituted an abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Smart's first through fourth points of error are sustained. The sustainment pretermits a discussion of the remaining points of error. Tex.R.App.P. 90(a).

Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court.

POFF, J., not participating.