**Dorothea JOHNSON, Appellant,**

v.

**Howard BERG, M.D., Appellee.**

**No. 07–92–0310–CV.**

Court of Appeals of Texas,
Amarillo.

Feb. 23, 1993.

Rehearing Overruled March 25, 1993.

Forrest Bowers, Lubbock, for appellant.

Gibson, Ochsner & Adkins, Thomas C. Riney and John A. Schmit, Amarillo, for appellee.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellant Dorothea Johnson (Johnson) brings this appeal from a directed verdict in favor of appellee Howard Berg, M.D. (Berg) in a medical malpractice case. In the suit, Johnson sought damages for injuries to her right hand and fingers which she maintains were caused by the negligence of Berg. The question for our decision is whether the exclusion of Johnson's expert witness was appropriate because of an alleged failure to comply with discovery rules.

In two points, Johnson contends the trial court erred in excluding the testimony, (1) because she had adequately and timely supplemented her answers to interrogatories designating and identifying her expert witness by a letter to opposing counsel, and (2) in failing to find good cause sufficient to allow the admission of the expert testimony. For reasons hereinafter stated, we reverse the judgment of the trial court and remand the cause to that court.

Because of the nature of the question presented, it is necessary to give a rather full recitation of the procedural and factual history of the case. On September 15, 1986, Johnson visited Berg complaining of a tingling discomfort in both hands, especially in her right hand. Berg concluded that her problems were caused by nerve entrapment at the wrist. According to Berg's affidavit, he performed a right carpal tunnel release with neurolysis of the median and ulnar nerves at the wrist with a fusion of the right thumb carpometacarpal joint on October 16, 1986.

In her suit, Johnson's sole allegation of negligence involved her post-operative treatment by Berg. Specifically, Johnson alleged that Berg was "negligent in that he placed a cast on her hand, and the cast was too tight, resulting in swelling and ischemia to her right hand and fingers...."

On December 22, 1988, Berg served Johnson with interrogatories. In interrogatory no. 2, he requested the names of each expert witness Johnson planned to use and requested other detailed information about them. On January 23, 1989, Johnson answered that interrogatory as follows:

Expert witnesses have not been determined at this time. This will be supplemented at a later time.

Supplemental answers to interrogatories were served by Johnson upon Berg on June 6, 1989, but there was no supplementation to interrogatory no. 2.

On April 16, 1990, Berg filed a motion seeking summary judgment that his treatment of Johnson conformed in all respects with the appropriate standard of care. In his affidavit supporting the motion, he averred that he followed the proper standard of care by placing a splint on Johnson's hand immediately after surgery. According to him, a cast was not placed upon Johnson's hand until 14 days after surgery.

Johnson accompanied her response to the motion with an affidavit of Royce C. Lewis, Jr., M.D. In his affidavit, Lewis stated his opinion that Johnson's problem resulted from a cast placed on her hand immediately after surgery which became too tight to allow proper circulation, resulting in a condition which required additional surgery. The response was also accompanied by affidavits of Freda Edmonds, Ronald Johnson, and Terry Johnson. Each of these affiants understood Berg's claim that he did not place a cast upon Johnson's hand immediately following surgery. However, each of them averred that he had seen Johnson on the day of her surgery with a plaster of paris cast on her hand, which remained on her hand until the middle of October, when a short arm fiberglass cast was placed upon her hand. On August 11, 1990, the motion for summary judgment was overruled.

On November 12, 1991, Johnson's counsel notified Berg's counsel that he wished

to take Lewis' deposition because "his physical condition is disallowing him to appear in court as an expert witness." Because of the witness' poor health, counsel wanted to videotape the deposition. A time was agreed upon and both counsel appeared and participated in taking the deposition. Berg's counsel extensively and thoroughly cross-examined Lewis, including questions referring to the fact that the jury would hear evidence "both ways" concerning whether Berg had actually placed the hand in a cast.

During the voir dire examination of the jury panel, Johnson's counsel stated that a dispute existed concerning the type of apparatus, a cast or a splint, that was placed on Johnson's hand following the surgery. Counsel attempted to advance the theory that regardless of whether a cast or a splint was placed upon Johnson's hand, Berg's conduct produced a circulatory disturbance which resulted in permanent injuries to her hand. However, this attempt was thwarted by Berg's successful objection that such a theory was outside the specific pleading concerning negligent application of a cast to Johnson's arm. It is also important to note that during his voir dire examination, Berg's counsel made fairly extensive reference to Lewis' expected testimony.

After Johnson's testimony, her counsel attempted to introduce Lewis' videotaped deposition. Berg's initial objection was to portions of the deposition which, he argued, presented the theory of the failure to detect compartment syndrome. He asserted those portions were outside the scope of the pleadings which alleged only the negligent placement of the cast on Johnson's arm. After an overnight recess, Berg's counsel broadened his objection to include the allegation that Lewis had not been properly designated as an expert witness and should not be allowed to testify. Concurring that Lewis had not been properly identified as an expert witness, the trial court excluded his testimony. There being no other expert witness, the trial court

directed the verdict in favor of Berg giving rise to this appeal.

It is well established in Texas in a medical malpractice cause of action that the threshold question for a complainant to prove is the applicable standard of care. *Connor v. Waltrip,* 791 S.W.2d 537, 539 (Tex.App.—Dallas 1990, no writ). Once the standard of care is established, the factfinder determines whether the physician's act or omission deviated from the standard of care to a degree constituting negligence or malpractice. *Id.; Rodriguez v. Reeves,* 730 S.W.2d 19, 21 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Coan v. Winters,* 646 S.W.2d 655, 657 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). The requisite proof of negligence must be established through expert testimony, unless the mode or form of treatment is a matter of common knowledge or is within the experience of laymen. *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977); *Shook v. Herman,* 759 S.W.2d 743, 747 (Tex.App.—Dallas 1988, writ denied). Clearly the mode or form of treatment in this case is not a matter of common knowledge or within the experience of laymen.

In this case, Johnson intended to use Lewis as her expert witness to establish the standard of care she alleged Berg breached in the treatment he administered. Determining that Lewis had not been properly identified under the discovery rules, the trial court excluded his testimony pursuant to Rule 215(5) of the Texas Rules of Civil Procedure.[1] Because of this exclusion, Johnson was unable to establish the initial element of her cause of action.

We are cognizant that our supreme court has written *ad nauseam* on the problems presented by Rule 215(5), which is the rule prescribing the imposition of sanctions for discovery rule infractions. However, we believe that this case contains a distinguishing factor not present in the various supreme court pronouncements.

---

**1.** Subsequent references in this opinion to rule numbers refer to those rules contained in the Texas Rules of Civil Procedure.

Much criticism has been lodged against the current discovery sanction rules. Charles F. Herring, Jr., *Reforming Texas Sanction Practice*, Texas Lawyer, Jan. 25, 1993, at 10, 10. The central theme of that criticism is that the current rules have

> evolved to a form that has encouraged, rather than discouraged, pretrial gamesmanship and procedural manipulation, often resulting in technical, outcome-determinative adjudications that were fundamentally inconsistent with the underlying objective set out in Texas Rule of Civil Procedure 1: 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.'

*Id.*

The Rules of Civil Procedure entitle a litigant to discover the identity and location of an expert witness who may be called at trial, as well as the subject matter on which the witness is expected to testify. Rule 166b(2)(e)(1). Litigants also have a duty to supplement discovery requests when a party expects to call an expert witness and the identity or the subject matter of the expert witness' testimony has not been previously disclosed in a response to an appropriate inquiry. Rule 166b(6)(b). The supplementation must include the name, address and telephone number of the expert witness, as well as the substance of the testimony which the expert witness is expected to give. *Id.* It is the duty to supplement that is at issue in this case.

■ In order to answer the questions presented by this appeal, we must not only analyze the text of the rule, but we must also analyze the policies and purposes underlying the formulation of the rule. The cornerstone of discovery is to "seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.1984). The discovery process furthers two basic goals for litigants. First, discovery provides parties

with notice of the evidence that the opposing party intends to present. For example, with regard to witnesses, the discovery process insures that parties can prepare for trial assured that a witness will not be called when the opposing party has not previously identified him. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d 669, 671 (Tex. 1990). *See West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978) (discovery allows parties the opportunity to obtain the fullest knowledge of issues and facts prior to trial). By encouraging full discovery of issues and facts prior to trial, parties are able to assess their respective positions, thereby facilitating settlements of disputes. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989).

Second, the discovery process prevents trial by ambush. *Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). As our supreme court recently explicated, a trial should be based upon the merits of the parties' claims and defenses, rather than on an advantage obtained by one side through a surprise attack. *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 90 (Tex.1992).

■ In her first point of error, Johnson contends she adequately and timely supplemented her answers to the interrogatories propounded by Berg requesting the designation of all expert witnesses to be called at trial. However, the only attempt to supplement those interrogatories was the letter dated November 12, 1991, written by Johnson's counsel and received by Berg's counsel. Thus, to accept Johnson's argument under this point would require us to find that the letter constitutes "supplementation" sufficient to comply with the requisites of Rule 166b(6)(b).[2]

In pertinent part, the letter states, "I have contacted Dr. Lewis' office and his physical condition is disallowing him to ap-

---

2. We note the statement by the Dallas Court of Appeals in *Stiles v. Royal Ins. Co. of America*, 798 S.W.2d 591, 596 (Tex.App.—Dallas 1990, writ denied), that the proper identification of an expert witness "should be done not merely by a letter to counsel...." We are not persuaded by this statement because neither the content nor the date of the letter in relation to the date of trial is contained in the opinion.

pear in court as an expert witness." The letter also states the place of the deposition, and that the deposition will be videotaped.

Initially, while a fair implication from the language "to appear in court as an expert witness" is that Johnson intended to call Lewis as an expert witness at trial, the letter does not explicitly state that the doctor is Johnson's expert whose testimony will be used at trial. Secondly, it is not clear that the address of the place of the deposition is the office of Lewis, because both Lewis and appellant's counsel practice in Lubbock. The rule requires that the supplementation must give the expert witness' address. Thirdly, the letter completely fails to list Lewis' telephone number as required by the rule. Finally, the letter completely fails to give the substance of the testimony expected from the witness as required by the rule. At most, the letter put Berg on notice of both Lewis' identity and Johnson's intent to use him as a witness. While, arguably, under the facts of this case, the letter substantially complies with Rule 166b(6)(b), it does not contain all of the specific ingredients of that rule and is not, therefore, in full compliance with it.

■ When a party fails to supplement a discovery request, the sanction is the automatic exclusion of the unidentified witness' testimony. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d at 671; Rule 215(5). A party fails to supplement within the purview of Rule 215(5), when that party fails to comply with the Rule 166b(6)(b) definition of supplementation. That is, a party has "failed to supplement" when that party has failed to give the expert witness' identity, location, or the subject matter about which the expert is expected to testify. Consequently, the November 12, 1991 letter failed to satisfy the requirements of Rule 166b(6)(b). We must, therefore, overrule Johnson's first point.

■ However, that determination does not complete our task. Rule 215(5) contains an exception to the automatic exclusion of an unidentified witness' testimony if the trial court finds good cause for the admission of the evidence. Rule 215(5);

*Sharp v. Broadway Nat. Bank*, 784 S.W.2d at 671; *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989).

■ The party offering the testimony and seeking the benefit of the exception has the burden of establishing good cause for the failure to supplement. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d at 671; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d at 395; *Yeldell v. Holiday Hills Retire. & Nursing*, 701 S.W.2d 243, 246 (Tex.1985). The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony, but it has no discretion to admit testimony excluded by the rule without a showing of good cause. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 914 (Tex.1992). In her second point, appellant contends that the trial court erred in failing to find good cause for the admission of Lewis' testimony.

The consistent thread running through the supreme court cases which have held that "good cause" to permit testimony did not exist, is that in each of those cases, a litigant completely failed to comply with the rules of discovery. This case is distinguishable from those cases because Johnson made some attempt to supplement her response. A brief synopsis of pertinent supreme court authority is helpful in explaining our reasoning.

In *Sharp v. Broadway Nat. Bank, supra*, the bank's counsel attempted to call himself and another non-designated attorney as expert witnesses on attorney fees, despite an appropriate inquiry by Sharp regarding expert witnesses who would testify. *Sharp v. Broadway Nat. Bank*, 784 S.W.2d at 670. The supreme court held that good cause for admission of the testimony had not been shown. *Id.* at 671. In doing so, the court explained that the absence of surprise, unfairness, or ambush will not alone amount to good cause. It also said that the fact that a witness has been deposed, or otherwise identified to all parties, is not enough to show good cause for a failure to supplement. The court explicated that "[a] party is entitled to prepare for trial assured that a witness will

not be called because opposing counsel has not identified him. . . ." *Id.* at 671.[3] A fair interpretation of the case is that the court is interested in the parties being on notice of which witnesses will be called to testify so that trial by ambush is avoided.

In *Alvarado v. Farah Mfg. Co., Inc.,* supra, the supreme court also found the trial court erred in admitting testimony because good cause for the admission of the evidence had not been shown. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d at 912. In that case, Alvarado subpoenaed two witnesses six days before trial that had not been identified in answers to interrogatories propounded by Farah. *Id.* at 913. En route to its holding, the court stated that lack of surprise,[4] inadvertence of counsel, and the uniqueness of the excluded evidence, "standing alone, are *not* in themselves good cause" for the admission of the evidence. *Id.* at 915. However, it follows that these factors, taken together or in some combination, could be good cause. *See also Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992) (factors that are independently insufficient to establish good cause, could be combined to establish good cause).

█ Under this record, we find that good cause has been established for the admission of Lewis' testimony. The considerations of notice and avoiding trial by ambush have been satisfied. A significant factor in our decision on the issue of good cause is the six-month length of time between the deposition of Lewis and the trial. This is a substantially longer period of time than existed in the previous supreme court cases that addressed the issue of good cause. *See, e.g., Sharp v. Broadway Nat. Bank,* 784 S.W.2d at 671 (bank's counsel announced on the day of trial his intent to call himself, an undesignated expert witness on attorney fees); *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d at 913 (party

indicated his intent to call two previously unidentified witnesses six days before trial); *Smith v. Southwest Feed Yards,* 835 S.W.2d at 161 (party failed to include himself in an interrogatory as a potential witness and gave notice of his intent to testify seven days before trial); *Henry S. Miller Co. v. Bynum,* 836 S.W.2d at 161 (party attempted to call himself at trial and had never identified himself previously).

In this case, both Berg and his counsel attended the deposition and Berg's counsel cross-examined Lewis. The deposition was videotaped, thus Lewis' testimony was ascertained and could not vacillate at trial. Because the deposition was taken so far in advance of trial, Berg had ample time to prepare for trial, knowing the contents of Lewis' testimony. The amount of time between the deposition and the trial provided Berg with the opportunity to redepose Lewis if necessary, and also allowed time to obtain additional expert witnesses, who could review the videotaped deposition, to refute Lewis' testimony, if Berg so desired.

The attempted, albeit imperfect, supplementation by the letter, and the length of time between the deposition and the trial, discredit the possibility of trial by ambush on the part of Johnson and support a finding of good cause.

Trial by ambush was one of the primary problems that the drafters of the discovery rules sought to eliminate. *Smith v. Southwest Feed Yards,* 835 S.W.2d at 91; *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d at 396. The typical example of "trial by ambush" involves a party who offers an undesignated witness on the eve of trial. In that instance, the party who offers an undesignated witness is "ambushing" the other party who had not been previously notified of the existence of the witness. That is not the situation in the case at bar.

Here, by the letter of November 12, 1991, Berg was notified of Lewis' identity

---

**3.** The supreme court affirms this proposition in *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex.1992), and *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 915 (Tex.1992).

**4.** The supreme court has previously stated that lack of surprise is not the standard, but may be

a factor for the trial court to consider when weighing whether good cause exists for the admission of testimony of an undisclosed witness. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d at 395 n. 2.

seven months before trial, and that his deposition was being taken because his health would prevent his appearance at trial. By the deposition, Berg knew the substance of Lewis' testimony six months before trial. During his voir dire examination of the jury panel, Berg's counsel informed the jury that Lewis would testify during the course of the trial. During the dialogue to determine if the testimony would be excluded, he stated, "... I knew they were going to call Dr. Lewis, I went down and cross-examined him...." The record sufficiently shows that Lewis' testimony was no surprise to Berg.

■ According to the supreme court, the imposition of sanctions must be "just." *Transamerican Natural Gas v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Whether a sanction is "just" is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Id.* For a sanction to be "just," it must be directed against the abuse and toward remedying the prejudice caused to the innocent party. *Id.* In addition, the sanction should be directed toward the offender. *Id.* Therefore, the trial court must at least attempt to determine whether the conduct in question is attributable to counsel only, to the party only, or to both. *Id.* Here, any failure to properly supplement is attributable solely to counsel for Johnson.

■ Second, for a sanction to be "just," it must not be excessive. The punishment should fit the crime. *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Id.* Thus, it follows that the courts must first consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance, deterrence, and discourage further abuse. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992).

In this case, the sanction imposed was the most severe and comparable to sudden death because it destroyed Johnson's opportunity to have a decision on the merits of her case. Only through Lewis' testimony on the standard of care could Johnson maintain her cause of action and have the

jury determine the validity of her complaints.

■ The supreme court has recently cautioned that although punishment, deterrence, and securing compliance with discovery rules continue to be valid reasons to impose sanctions, those considerations alone cannot justify a trial by sanction. *Id.* Sanctions that by their severity prevent a decision on the merits of a case cannot be justified absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.; Transamerican Natural Gas v. Powell*, 811 S.W.2d at 918. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747, 751 (1976).

Clearly, this record does not demonstrate flagrant bad faith by Johnson nor callous disregard by her counsel of the discovery rules. Rather, unlike the cases in which parties notified opposing counsel of their intent to call undesignated witnesses on the eve of trial, Johnson made a good faith effort to comply with the rules of discovery by notifying opposing counsel and scheduling the deposition well in advance of trial.

■ Discovery sanctions imposed by a trial court are within that court's discretion and their imposition will be set aside only if the trial court clearly exceeded that discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986) (per curiam). The mere fact that a trial judge decided a matter within his discretionary authority in a different way than an appellate judge might have decided the matter under the same circumstances does not establish that the trial judge exceeded his discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ Even so, a trial court exceeds its discretion if the sanction it imposes exceeds the purposes that discovery sanctions are intended to further. *Chrysler Corp. v. Blackmon*, 841 S.W.2d at 849; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d at 242.

■ The purpose of Rule 215(5) is to promote responsible assessment of settle-

ment and to prevent trial by ambush. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d at 914. Given the effect of the sanction imposed by the trial court, when there were other lesser and more appropriate sanctions available, we must conclude the sanction exceeds the purpose of the rule. This is particularly true in view of the fact that the conduct of Johnson's counsel demonstrates there was no flagrant bad faith or callous disregard of the rule. The time lapse between the taking of the deposition, along with Berg's voir dire examination of the jury panel, demonstrates that Berg would not be ambushed by the introduction of the testimony. If there were portions of Lewis' testimony that covered matters beyond the scope of the pleadings, this could have been excluded by proper objection in the course of the trial.

The record shows that Johnson has demonstrated good cause for the admission of Lewis' testimony and does not support the sanction excluding the receipt of that testimony. We must, therefore, sustain Johnson's second point. Sustention of that point requires us to reverse the trial court judgment and remand the cause to the trial court. Tex.R.App.P. 81(b)(1).

Accordingly, the judgment of the trial court is reversed and the cause remanded to that court.