Mackey v. Byler 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-326-CV





KENNARD J. MACKEY,



 APPELLANT


vs.





HAROLD C. BYLER,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT



NO. 91-4539, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING



 




 Kennard J. Mackey sued Harold C. Byler for libel, and Byler counterclaimed for
declaratory judgment, damages, and attorney's fees. The trial court rendered judgment that
Mackey take nothing and awarded Byler $5,400 in compensatory damages and $16,357 in
attorney's fees. We will affirm the judgment of the trial court.



BACKGROUND


 This suit arises out of a dispute concerning the management of the Mauna Kai
Condominiums in Austin, Texas. In 1990, Byler purchased a number of units believing that he
would thereby obtain a majority of the active voting shares of the Mauna Kai Homeowners'
Association (the "Association"). Byler purchased these units with the intent to control the
Association; he planned to elect himself to the paid manager position and to gain sole authority
over the management and upkeep of the condominiums. However, in a January 1991 board
meeting, Byler was informed that he would not be allowed to vote certain shares because some
of his units were subject to past due assessments for homeowner's fees incurred by previous
owners. There was also a dispute regarding a voting proxy which Byler claimed to have
purchased from another unit owner. (1)

 Byler sent a number of letters to Mackey, and allegedly to other members of the
Association, protesting the Association's refusal to allow him to vote all of his shares and
asserting his right to manage the condominiums. Mackey sued Byler for libel, citing Byler's
references to a conspiracy involving the "theft" of Byler's votes and claiming that those allegations
were directed at him as president of the board. Byler filed a counterclaim seeking declaratory
judgment that he had a right to the votes at issue, and seeking damages and attorney's fees. Byler
then amended his counterclaim and joined the three other members of the Association's board of
directors. Subsequently, Byler and the three other board members reached an agreed declaratory
judgment that Byler was entitled to vote all his shares. A non-suit was filed as to the other three
board members. Mackey was not a party to the agreed judgment, and both Mackey and Byler
remained parties to the litigation with respect to each of their claims.

 The trial court found that Mackey had not proven the elements necessary to prevail
on his libel claim and rendered judgment that he take nothing. The trial court did not expressly
render a declaratory judgment on Byler's counterclaim, but awarded Byler $5,400 in damages, (2)
and $16,357 in attorney's fees. The judgment stated that all relief not expressly granted was
denied. On appeal, Mackey complains that the trial court imposed an improper sanction by
refusing to allow the testimony of a fact witness. He also challenges the award of damages and
attorney's fees.



THE LIBEL CLAIM


 In his first and second points of error, Mackey asserts that the trial court abused
its discretion by refusing to allow a fact witness to testify. The trial court ruled that Karl Hendler
could not testify because when Mackey was asked during his deposition to list all people with
knowledge of relevant facts, he did not identify Hendler. See Tex. R. Civ. P. 215(5). Nor did
Mackey supplement his deposition to include Hendler's name. We must decide (1) whether
Mackey has preserved this issue for appellate review; (2) whether the trial court abused its
discretion by refusing to allow Hendler to testify; and (3) whether the alleged error requires that
we reverse the trial court's judgment.

 Byler argues that, because Mackey did not file a bill of exceptions or make an offer
of proof, he has not preserved for review his claim that the trial court improperly excluded
Hendler from testifying. See Tex. R. Civ. Evid. 103 ("Error may not be predicated upon a ruling
which admits or excludes evidence unless . . . the substance of the evidence was made known to
the court by offer."); Tex. R. App. P. 52(b), (c). Although it is generally true that a point of
error protesting the exclusion of evidence must be preserved by an offer of proof, Duncan v.
Cessna Aircraft Co., 665 S.W.2d 414, 433-34 (Tex. 1984), the trial court's refusal to allow
Hendler to testify in this case was based on a discovery sanction and not a ruling on the
admissibility of the testimony per se. A bill of exceptions is not necessary to preserve for
appellate review a party's complaint that the trial court improperly applied a discovery sanction. 
See Jones v. Kinder, 807 S.W.2d 868, 871-72 (Tex. App.--Amarillo 1991, no writ) ("Once the
trial judge has disqualified a witness and precluded the witness from testifying due to a perceived
violation of a procedural rule, as opposed to excluding testimony due to its substance, we find
error is preserved without the need to reoffer the bill of exception testimony and without the need
to obtain a subsequent ruling."). But see Weng Enters. v. Embassy World Travel, 837 S.W.2d
217, 221 (Tex. App.--Houston [1st Dist.] 1992, no writ) (stating that without a bill of exception
the court had no basis for reviewing a contention that the trial court committed reversible error,
and holding that the appellant had therefore failed to preserve error). The content of a witness'
testimony has no bearing upon the trial court's decision to impose a discovery sanction and to
refuse to allow that witness to testify. Jones, 807 S.W.2d at 871-72. The appellate court may,
therefore, review whether the trial court erred in levying the discovery sanction without knowing
the content of the witness' proposed testimony. We recognize that a reviewing court must be
apprised of the content of the excluded witness' testimony in order to determine whether the error,
if any, was calculated to cause and probably did cause the rendition of an improper judgment. 
See Tex. R. App. P. 81(b). However, whether a party properly preserved a complaint for appeal
is a separate question from whether it can demonstrate reversible error if the appellate court finds
error. At trial, Mackey urged the court not to impose the rule 215(5) sanction. We hold that
Mackey properly informed the trial court of the substance of his complaint and has therefore
preserved that complaint for review.

 We now examine whether the trial court abused its discretion in preventing Hendler
from testifying. During a deposition, Mackey was asked to list any people with knowledge of the
facts surrounding the case other than members of the Association. Mackey did not name Hendler,
nor did he supplement his deposition to include Hendler. (3) Mackey does not dispute that this
omission exposes him to a rule 215(5) sanction. Rather, he argues that the trial court abused its
discretion by (1) failing to consider lesser sanctions, and (2) failing to find that Mackey was
within the "good cause" exception to rule 215(5). Because the applicable standard of review in
both instances is abuse of discretion, we look only to whether the trial court "acted without
reference to any guiding rules and principles." Morrow v. H.E.B., Inc., 714 S.W.2d 297, 298
(Tex. 1986). We believe the trial court was well within its discretion to impose rule 215(5)
sanctions.

 Mackey argues that the trial court should have considered lesser sanctions before
refusing to allow Hendler to testify. Mackey relies on cases holding that a trial court may only
apply "just" sanctions, and must attempt to use moderate sanctions before applying any sanction
that may be fairly characterized as a "death penalty" sanction, such as striking pleadings. See
TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913 (Tex. 1991). However, these
cases all involve application of rule 215(2) which deals with a party's failure to comply with
proper discovery requests or to obey discovery orders. Rule 215(2) lists a range of applicable
sanctions for discovery abuse, the most severe of which is a "death penalty" sanction. Under rule
215(5), however, the sanction of excluding a witness is "automatic." The trial court may not
consider lesser, alternative sanctions of the type that Mackey urges. See Boothe v. Hausler, 766
S.W.2d 788, 789 (Tex. 1989) (describing rule 215(5) as a "strict rule" which only a showing of
good cause can overcome); Morrow, 714 S.W.2d at 297-98 (asserting that a finding of good cause
is the only manner in which the automatic exclusion under rule 215(5) can be avoided); Johnson
v. Berg, 848 S.W.2d 345, 350 (Tex. App.--Amarillo 1993, no writ) ("The trial court has discretion
to determine whether the offering party has met his burden of showing good cause to admit the
testimony, but it has no discretion to admit testimony excluded by the rule without a showing of
good cause."). The trial court is obliged to exclude the testimony in the absence of a showing of
good cause. Furthermore, Mackey did not argue that excluding Hendler's testimony ever
approached a "death penalty" sanction. Although the trial court could have postponed the trial
to allow Byler to depose Hendler, it was not an abuse of discretion for the trial court to refuse to
consider or pursue that option. Far from acting without reference to guiding principles, the trial
court followed the plain language of rule 215(5), Morrow, and other cases, all of which agree that
the rule operates mechanically and automatically absent a showing of good cause.

 We now turn to whether the trial court abused its discretion in finding no good
cause. The "good cause" exception to rule 215(5) requires both a showing of good cause for the
failure to identify the witness and a showing of good cause for allowing the testimony. See Clark
v. Trailways, Inc., 774 S.W.2d 644, 646 (Tex. 1989), cert. denied, 493 U.S. 1074 (1990);
Alexander v. State, 803 S.W.2d 852, 858 (Tex. App.--Corpus Christi 1991, writ denied) (citing
K-Mart v. Grebe, 787 S.W.2d 122, 126 (Tex. App.--Corpus Christi 1990, writ denied)). The trial
court's determination of good cause is subject to review only for abuse of discretion. Morrow,
714 S.W.2d at 298. Mackey's argument that he falls within the good cause exception to rule
215(5) rests on his claim that Byler knew Hendler was a person with knowledge of relevant facts
and that he therefore would not be surprised by Hendler's testifying. Mackey claims the failure
to name Hendler was due to his counsel's inadvertence. However, neither of these factors alone
or in combination is sufficient to demonstrate good cause. See Sharp v. Broadway Nat'l Bank,
784 S.W.2d 669, 671-72 (Tex. 1990). Byler may have known of Hendler's existence and
relationship to the other parties, but nothing in the record demonstrates that Byler knew Mackey
intended to call Hendler as a witness. We conclude that the trial court correctly found that
Mackey did not demonstrate good cause for his failure to identify the witness. Nor did he show
good cause for allowing the testimony of an unidentified fact witness. See id. at 671 ("A party
is entitled to prepare for trial assured that a witness will not be called because opposing counsel
has not identified him or her in response to a proper [discovery request].").

 Even if the trial court's imposition of sanctions was an abuse of its discretion,
Mackey has entirely failed to demonstrate that the exclusion of Hendler's testimony constitutes
reversible error. See Tex. R. App. P. 81(b)(1). The exclusion of evidence does not present
reversible error unless the party proves that the case turned on the evidence in question. Gee v.
Liberty Mut. Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989); Dudley v. Humana Hosp. Corp., 817
S.W.2d 124, 126 (Tex. App.--Houston [14th Dist.] 1991, no writ). This Court cannot determine
whether Hendler's testimony would have affected the outcome of the case absent a bill of
exceptions or some other record evidence revealing the content of that testimony. In this case,
the record does not show the content of Hendler's testimony. We may not even guess what
Mackey hoped to accomplish by calling Hendler as a witness. None of the allegedly libelous
letters are addressed to Hendler, so his ability to testify to the publication element of the libel
claim, for example, is not clear. Hendler was not a member of the Homeowners' Association,
and the record does not show that he was competent to testify about decisions made by the
Association in 1991 (4) or the propriety of those decisions. Such testimony would bear on the truth
or falsehood of Byler's accusation. (5) In the event the trial court abused its discretion in excluding
Hendler's testimony, we have no basis for deciding that such exclusion was harmful. We overrule
Mackey's first two points of error.



THE COUNTERCLAIM


 Mackey's third and fourth points of error concern Byler's counterclaim. Mackey
contends that the trial court erred in awarding damages in the amount of $5,400 and attorney's
fees in the amount of $16,357.

 Mackey asserts that the award of damages is unjustified under contract or tort law. 
In the absence of findings of fact or conclusions of law, we must affirm the judgment of the trial
court if it is supported by any legal theory raised by the evidence, and we deem all facts as found
against Mackey. Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 279 (Tex. 1987). We
find that the evidence was legally and factually sufficient to support an award of damages
grounded in tort.

 Mackey argues initially that the evidence was insufficient to support a finding that
Mackey owed an individual duty to Byler. However, it is uncontroverted that one section of the
Condominium Declaration provides:



Failure to comply with any of the same shall be grounds for an action to recover
sums due for damages or for injunctive relief, or both, maintainable by the
association on behalf of the owner or, in the proper case, by an aggrieved owner
against another owner or against the association.



When one joins a voluntary association, one becomes bound by all reasonable rules imposed by
the association's charter. Combs v. Texas State Teachers Ass'n, 533 S.W.2d 911, 913 (Tex. Civ.
App.--Austin 1976, writ ref'd n.r.e.). By virtue of his membership in, and presidency of, the
association, Mackey voluntarily exposed himself to the possibility of individual liability for his
actions in connection with the performance of his duties as president by implicitly agreeing to be
bound by that provision in the declaration. Mackey argues that the declaration provision, when
examined in the context of the rest of the declaration and of the bylaws, does not support the
conclusion that he is liable to Byler in this instance. However, the full texts of those two
documents are not part of the record on appeal, and we have no basis for evaluating Mackey's
construction of them. Therefore, we presume that the trial court properly construed the
documents and found that they imposed an individual duty on Mackey. 

 We also note that nothing in Texas' statutory scheme for organizations of this type
prevents the governing documents from imposing a duty on Mackey. The Condominium Act of
1963, which governs the Mauna Kai arrangement, does not speak to the liability of members of
a condominium's governing unit. See Tex. Prop. Code Ann. §§ 81.000-81.210 (West 1984); but
see Tex. Prop. Code Ann. § 82.103 (f)-(g) (West Supp. 1994) (providing a limitation on the
liability of association officers and directors effective for condominium regimes established after
Jan. 1, 1994). In the absence of a copy of the declaration and bylaws, we cannot say with
certainty exactly what type of entity the Mauna Kai Homeowners' Association is. The pleadings
and agreed judgment refer to it as a "Texas non-profit organization." Mackey occasionally refers
to it as a "Texas non-profit corporation," which would imply the applicability of Tex. Rev. Civ.
Stat. Ann. art 2.01 (West 1984 & Supp. 1994). Moreover, Mackey's brief cites the Texas
Business Corporations Act, although that Act governs for-profit entities only. Tex. Bus. Corp.
Act Ann. art 2.01 (West 1980 & Supp. 1994). In any event, Mackey has failed to demonstrate
the applicability of a statutory limitation on liability, and the trial court could properly have found
that the express provision for director liability in the Declaration imposed on Mackey, at a
minimum, an individual duty of good faith and fair dealing and a duty to comply with the
Association's governing documents in his dealings with Byler.

 In determining whether there was sufficient evidence that Mackey negligently
breached his duty as president, we do not address the parties' dispute as to whether the provision
in the bylaws denying votes as a result of assessments incurred by previous owners was a
reasonable provision. Instead, we note that Byler had inquired about the presence of past due
assessments in the process of purchasing the units and that it was a clear violation of the bylaws
to deny him votes based on assessments which he had asked about and which had been represented
to him as non-existent. Mackey either voted to deny Byler the votes in question or acquiesced in
giving Zunker complete authority to resolve the dispute. The trial court could have found that
either decision was negligent because Mackey should have been aware of the bylaws provision
by which Byler held an indisputable right to the votes in question.

 Mackey argues that his reliance on Zunker, an attorney, fulfilled his duty toward
Byler. Mackey cites Tex. Bus. Corp. Act Ann. art. 2.41 for the proposition that reliance on an
attorney is conclusive with respect to negligence. We reiterate, however, that we are not
convinced the Act applies to Mauna Kai. We conclude that reliance on Zunker was some evidence
of care. However, when we examine the evidence favorable to Byler, we find sufficient evidence
to support the view that reliance on Zunker was unreasonable, that Mackey was completely
unfamiliar with the documents governing the dispute, and that Mackey did not solicit Zunker's
legal opinion but rather simply made a wholesale delegation of the issue to Zunker. The trial
court had sufficient evidence on which to base a finding of negligence by Mackey.

 The elements of proximate cause and damages are only nominally contested by
Mackey. We conclude that there was sufficient evidence to support findings on both these
elements of Byler's tort claim. The trial court could have awarded damages in tort to Byler.

 Mackey argues that any finding of damages by the trial court runs contrary to the
maxim that courts will not interfere with the internal affairs of a voluntary non-profit association. 
See Lawrence v. Ridgewood Country Club, 635 S.W.2d 665, 666 (Tex. App.--Waco 1982, writ
ref'd n.r.e.); Combs, 533 S.W.2d at 913. An exception to that rule applies when the organization
violates its own rules and procedures. Lawrence, 635 S.W.2d at 666. The Association did
exactly that when it denied Byler voting rights even though he was entitled to rely on the
representation that he was settling all past due assessments upon purchase of the units. Combs,
for example, involved a refusal by the court to decide between two competing reasonable
interpretations of an association's constitution. Combs, 533 S.W.2d at 913. In this case, the
provision that a representation as to the status of assessments "shall be conclusive upon the
association in favor of all persons who rely thereon in good faith" is not open to multiple
interpretations. The general rule of non-interference in the affairs of a voluntary association did
not prohibit, in this case, the trial court from awarding damages to Byler. We overrule Mackey's
third point of error.

 In Mackey's fourth point of error, he argues that the trial court abused its discretion
by awarding Byler attorney's fees. We agree with Mackey that the trial court's finding that
Mackey was liable in tort will not support an award of attorney's fees and that Byler's last-minute
attempt to characterize the cause of action as a breach of contract claim will not support the
award, because the pleadings cannot be fairly read to assert such a claim. However, in the
absence of findings of fact and conclusions of law, the award must be upheld if it is supported by
any legal theory properly pleaded and supported by the evidence. Point Lookout West, 742
S.W.2d at 279. We believe the trial court did not abuse its discretion in awarding attorney's fees
pursuant to the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West
1986).

 We note initially that the trial court retained jurisdiction over Byler's declaratory
judgment action and was authorized to award attorney's fees in such an action. Although the
agreed judgment rendered by the trial court purported to sever the declaratory judgment action
from the action for damages and to render final judgment on the declaratory judgment claim, it
was interlocutory insofar as it did not dispose of Byler's initial declaratory judgment cause of
action against Mackey. See Houston Health Clubs v. First Court of Appeals, 722 S.W.2d 692,
693 (Tex. 1986) (defining a final judgment as a judgment that disposes of all parties and issues). 
The agreed judgment did have the practical effect of resolving the dispute over Byler's voting
rights; the agreement of four of the five board members that Byler was entitled to the contested
votes rendered Mackey's opinion on that subject irrelevant. However, the resolution of the
dispute which was the basis for the requested substantive declaratory relief neither rendered
Byler's declaratory judgment action against Mackey moot nor caused the trial court to lose
jurisdiction over that claim. When the controversy giving rise to a declaratory judgment action
is resolved, the existence of a "live" dispute over attorney's fees breathes life into an otherwise
moot claim and preserves jurisdiction. Camarena v. Texas Employment Comm'n, 754 S.W.2d
149, 151 (Tex. 1988). Byler's entire claim against Mackey survived because he was not a party
to the agreed judgment. Therefore, the trial court continued to have jurisdiction over Byler's
claim for attorney's fees under the Declaratory Judgments Act. 

 Mackey contends that the Declaratory Judgments Act will not authorize an award
of attorney's fees under the facts of this case because (1) Byler improperly brought his
counterclaim under the Act for the sole purpose of obtaining attorney's fees, and (2) Byler cannot
obtain attorney's fees against Mackey in the absence of a final declaratory judgment against
Mackey. Neither of these arguments has been preserved for appeal.

 Mackey's contention that Byler invoked the Declaratory Judgments Act solely for
the purposes of obtaining attorney's fees was not brought to the attention of the trial court and is
therefore not preserved for appellate review. A complaint such as this is not a jurisdictional
complaint; rather, it is a complaint of failure to state a valid cause of action and, as such, may be
waived if not properly preserved. Narisi v. Legend Diversified Invs., 715 S.W.2d 49, 52 (Tex.
App.--Dallas 1986, writ ref'd n.r.e.). The preferred manner of preserving this issue for appeal
is by special exception to the counterclaim. Gulf Ins. Co. v. Vantage Properties, Inc., 858
S.W.2d 52, 55 (Tex. App.--Houston [14th Dist.] 1993, writ denied); Hudspeth v. Hudspeth, 756
S.W.2d 29, 34 (Tex. App.--San Antonio 1988, writ denied); Narisi, 715 S.W.2d at 52. Mackey's
special exceptions to the counterclaim did not challenge the validity of bringing the counterclaim
under the Declaratory Judgments Act. This Court has noted that it will consider an argument of
this sort in the absence of special exceptions only if the trial court was made aware that a party
was objecting to an award of attorney's fees on the specific grounds that a declaratory action was
improperly brought. HECI Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 638 (Tex.
App.--Austin 1992, writ denied). In any event, this objection must be made before the judgment
is signed. Tex. R. Civ. P. 90; Gulf Ins. Co., 858 S.W.2d at 55. However, in this case, our
examination of the record reveals that Mackey never challenged in any way at trial the validity
of the counterclaim as a declaratory action. Accordingly, he has waived his right to object to the
award of attorney's fees on the ground that the declaratory judgment claim was brought
improperly. 

 Mackey urges, alternatively, that he is not liable to Byler for attorney's fees under
the Act because Byler did not obtain a final declaratory judgment against Mackey. However, by
failing to file a motion to modify, correct or reform the judgment, as provided by rule 329b(g)
of the Texas Rules of Civil Procedure, or to apprise the trial court in any way of the defect in the
judgment, Mackey has waived this complaint as well. See Guerrero v. Sanders, 846 S.W.2d 354,
358 (Tex. App.--Fort Worth 1992, no writ) (holding that appellant waived complaint about trial
court's failure to award prejudgment interest); Texas Am. Corp. v. Woodbridge Joint Venture, 809
S.W.2d 299, 300 (Tex. App.--Fort Worth 1991, writ denied) (holding that appellant waived
complaint about calculation of attorney's fees). We overrule Mackey's fourth point of error.



CONCLUSION


 Finding no error, we affirm the judgment of the trial court.



 Bea Ann Smith, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: April 27, 1994

Do Not Publish
1. [1]  The evidence is conflicting as to whether the board formally voted to deny Byler the voting
rights or whether that decision was made by Jerry Zunker, a board member and attorney, with
the acquiescence of other board members, including Mackey.
2. [2]  This sum represents one quarter of the salary that Byler would have received as manager
for two years had he been permitted to vote himself into that position. The trial court awarded
this amount on the theory that each of the other four members of the board of directors was
individually liable for one quarter of Byler's damages.
3. [3]  We note our preference for obtaining lists of potential fact witnesses through interrogatories. 
However, deposition questions are an acceptable means of gaining lists of potential fact witnesses. 
Foster v. Cunningham, 825 S.W.2d 806, 808 (Tex. App.--Fort Worth 1992, writ denied)
(concluding that asking for a list of fact witnesses during a deposition constitutes a proper
discovery request); see also Giffin v. Smith, 668 S.W.2d 112, 113 (Tex. 1985) (holding that the
trial court abused its discretion in refusing to compel answers to deposition questions regarding
identity and location of potential fact witnesses). Regardless of our appreciation of the difficulty
a party may have remembering all potential fact witnesses during a deposition, Mackey had a duty
to supplement his answers as soon as he discovered the omission. Tex. R. Civ. P. 166b(6);
Foster, 825 S.W.2d at 808. It is the failure to supplement that subjects Mackey to the sanction. 
4. [4]  The statement of facts does reflect Mackey's contention that Hendler did have knowledge
of some of the activities of the Association which took place subsequent to the alleged publication
of the letters in question. For example, counsel for Mackey alluded, in connection with Hendler,
to a meeting on January 28, 1992. It remains unclear, however, what Hendler's connection was
to the letters in question or the events that prompted Byler to draft them.
5. [5]  Mackey's burden on appeal is virtually insurmountable insofar as his failure to offer proof
of Hendler's testimony is compounded by his failure to request findings of fact or conclusions of
law. In the absence of findings and conclusions, we presume that the trial court made all the
necessary findings to support the judgment and we may only consider evidence favorable to the
trial court's holding. Lemons v. E.M.W. Mfg. Co., 747 S.W.2d 372, 373 (Tex. 1988). Most,
if not all, of the elements of Mackey's libel claim were contested at the trial, and the trial court
could properly have found that any one of them was unproven. In effect, Mackey asks us to
assume that Hendler's testimony would have constituted conclusive evidence on every element at
issue in the trial. The record simply does not support such an assumption.