**Pearl GARZA and Dimitrius Roy Garcia, Appellants,**

v.

**Eulogio TAN, M.D., et al., Appellees.**

No. 13–92–139–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 25, 1993.

Mary Ann Rea, Andy Tindel, Hill, Perry & Sloan, Longview, for appellants.

Tina Snelling, J. Preston Wrotenbery, Marc A. Sheiness, Hirsch, Glover, Robinson & Sheiness, Houston, for appellees.

Before NYE, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

Pearl Garza, individually and as next friend of Roy Garcia, a minor (appellants), sued Eulogio Tan, M.D., and Medical Networks, Inc. (appellees), alleging that they were negligent in their diagnosis and treatment of Roy Garcia while he was being treated at Nan Travis Memorial Hospital's emergency room. The jury found that the plaintiff, Pearl Garza's negligence proximately caused the complained-of injuries.[1] We affirm.

In January 1988, fifteen-year-old Roy Garcia came home and informed his mother, Pearl Garza, that he thought that he had fallen off of his skateboard. He was crying, could not hold himself up, and complained that his head hurt. Garza saw that blood was coming from his ear, so she took him to the emergency room at Nan Travis Hospital in Jacksonville. Dr. Eulogio Tan examined Roy and asked him several questions. Roy gave half answers and some full answers that did not make sense. His speech was slurred, and he kept complaining that his head hurt. X-rays showed that Roy did not have a skull fracture. Dr. Tan gave Garza some head-injury instructions to follow and then released him. Soon after Roy went home, Garza had trouble waking him up. He also had a fever. Garza testified that she called Nan Travis Hospital and was advised to take Roy to his doctor the next morning. The next morning, she took Roy to the doctor. The doctor could not get a response from him. He was taken to Medical Center Hospital in Tyler where he underwent surgery to remove a blood clot from his brain. After the surgery, Roy started having seizures. Also, he became arrogant, aggressive, and forgetful. According to Dr. Lloyd Mercer, a pediatric neurologist, a part of the injury to Roy's brain was the result of the initial blow which was possibly either aggravated or contributed to by the surgical procedure required to remove the blood clot.

Appellants/plaintiffs do not complain about the sufficiency of the evidence or the jury verdict. However, by three points of error, they complain that the trial court erred by overruling their challenges for cause to the jury veniremembers and in allowing appellees' expert witnesses to testify.

First, appellants complain that the trial court erred by overruling their challenges for cause on jurors James Warnix, Elizabeth Sailors, Sarah Winter, Patricia Alcorn, and Beverly Pearson. This, they contend, is because these jurors were disqualified as a matter of law and that the trial court abused its discretion in overruling their

---

1. The Texas Supreme Court ordered the transfer of this case from the First Court of Appeals to this Court. On appeal, appellants have designated Dr. Tan and Medical Networks, Inc., as appellees. The record shows that appellants did not seek relief against Medical Networks at the trial below.

challenges for cause on these same jurors. Appellants call our attention to the individual voir dire of the above-mentioned jurors, along with that of Patrick Dunnahoo. These veniremembers expressed their concern about the number of medical-negligence suits and the amount of damages awarded in these suits as well as in other lawsuits.

At the end of individual voir dire, appellants' counsel challenged for cause the above-mentioned veniremembers, along with another veniremember, Ruby Tausend. The trial court refused to strike these veniremembers. Appellants' counsel objected to the trial court's failure to grant challenges for cause on Warnix, Sailors, and Alcorn.[2]

■ Section 62.105(4) of the Texas Government Code provides that a person is disqualified to serve as a petit juror in a particular case if he has a bias or prejudice in favor of or against a party in the case. TEX. GOV'T CODE ANN. § 62.105(4) (Vernon Supp.1993). When there are grounds for disqualification other than those provided for in the statute, the trial court's discretionary powers may be exercised. *Compton v. Henrie*, 364 S.W.2d 179, 182 (Tex. 1963).

In *Compton*, the Supreme Court defined the terms "bias" and "prejudice" as follows:

> Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means prejudgment, and consequently embraces bias; the converse is not true. . . .

*Compton*, 364 S.W.2d at 182. The *Compton* court stated that the establishment of such a state of mind would disqualify a juror from serving on a jury as a matter of law. *Compton* held the statutory disqualification of bias or prejudice extends not only to the litigant personally, but to the subject matter of the litigation.[3] Whether a veniremember is biased or prejudiced may be a factual determination to be made by the court. *Swap Shop v. Fortune*, 365 S.W.2d 151, 154 (Tex.1963).

■ If the evidence conclusively establishes that a veniremember had a state of mind in favor of or against a litigant or type of suit so that he or she would not act *with impartiality or prejudice in the case*, an appellate court must hold that the veniremember was disqualified as a matter of law; however, when the evidence does not conclusively establish the veniremember's disqualification as a matter of law, the appellate court must consider the evidence in a light most favorable to upholding the trial court's ruling. *Gum v. Schaefer*, 683 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1984, no writ); *Bullard v. Universal Underwriters Ins. Co.*, 609 S.W.2d 621, 624 (Tex.Civ.App.—Amarillo 1980, no writ).

■ The trial court had the opportunity to observe the veniremembers as they testified and was able to evaluate their sincerity and capacity for fairness and impartiality. In this case, the veniremembers' statements did not conclusively establish that they had a biased or prejudiced state of mind for or against the litigants personally, or that they harbored these feelings against the subject matter of the litigation. We hold that the trial court did not abuse its discretion by overruling appellants' challenges for cause. *See Compton*, 364 S.W.2d at 182. Points one and two are overruled.

2. Appellants' counsel informed the trial court that he had to use a peremptory strike on Warnix, which prevented him from being able to strike Sarah Winter; that he had to use a peremptory strike on Sailors, which prevented him from being able to strike Beverly Pearson; and that he had to use a peremptory strike on Alcorn, which prevented him from being able to strike Roy Hernandez.

3. In *Compton*, a juror made no answer when asked whether he (or others) was biased or prejudiced against a suit for damages resulting from an automobile collision, but soon after the jury began deliberations, the juror said to the other jurors that he did not believe in such law suits. The Supreme Court held the juror was not disqualified.

By point three, appellants complain that the trial court abused its discretion by allowing appellees' experts, Drs. Fite and McKay, to testify because they were untimely and incompletely disclosed, without a showing of good cause. On July 22, 1991, the trial court signed an order (July 22 Order), granting appellants' motion to compel designation of experts. The order stated, in relevant part:

> Dr. Eulogio Tan is ordered to designate any other experts he intends to call at the trial of this cause within thirty (30) days from the date of this Order.

> Medical Networks, Inc. is ordered to designate the name, address and identity of any expert they intend to call at the time of trial within thirty (30) days of this Order. In addition, Medical Networks, Inc. is further ordered that they state in response to Interrogatory No. 21 the subject matter of the expert's testimony, all opinions and conclusions which each expert has regarding the care and treatment of Dimitrius Roy Garcia by any of the Defendants in this lawsuit and all facts which form the basis or were considered in reaching any conclusion or opinions by their expert in this case.

> It is further ORDERED that each expert designated by the Defendants prepare a report to be provided to the Plaintiff....

After the order was entered, counsels for appellants and appellees entered into a Rule [4] 11 agreement, which allowed appellees to designate experts no later than September 6, 1991. On that date, appellees filed their supplemental responses to interrogatories, designating Drs. Fite and McKay as experts. Certificates of service attached thereto show that true and correct copies had been forwarded to opposing counsel by either certified mail or hand delivery, return receipt requested, on September 6.[5] Appellants received the written reports of Drs. Fite and McKay on September 17 and 23, 1991, respectively.

About a month later, on October 17, 1991 (the day trial began), the trial court heard appellants' motion to strike Drs. McKay and Fite as experts. Appellants argued that appellees did not timely designate them as experts and did not timely produce their written reports. The trial court overruled the motion.

On appeal, appellants complain that appellees were under court order to designate experts, to provide their reports, and to supplement interrogatories on or before September 6, 1991. In this case, appellees' supplemental response to interrogatories were filed and served on appellants' counsel on September 6, 1991. This was within thirty days of the date trial began and within the parameters of the Rule 11 agreement. *See Shell Western E & P, Inc. v. Partida,* 823 S.W.2d 400 (Tex.App.—Corpus Christi 1992, orig. proceeding).

■ Concerning appellants' contention that the reports were not timely produced, Rule 166b(2)(e)(4) provides, in relevant part:

> If the discoverable factual observations, tests, supporting data, calculations, photographs, or opinions of an expert who will be called as an expert witness have not been recorded and reduced to tangible form, the trial judge may order these matters reduced to tangible form and produced within a reasonable time before the date of trial.

TEX.R.CIV.P. 166b(2)(e)(4). In this case, the July 22 Order did not state when the reports had to be produced. (By its context, the Rule 11 agreement only applied to the designation of experts.) When the trial court heard appellants' motion to strike, appellees' counsel informed it that the reports were produced "as soon as they touched my hands." Taking these factors into account, we conclude that the production of the reports on September 17 and 23, 1991, was within a reasonable time before trial.

■ Concerning the supplementation of interrogatories, appellants complain that

---

4. Whenever the word "Rule" appears, it refers to the Texas Rules of Civil Procedure.

5. The certificates are dated September 6, 1990. The verifications were notarized on September

6, 1991 (for Medical Networks), and September 5, 1991 (for Dr. Tan). The Supplemental Answers to Interrogatories were filed on September 6, 1991.

appellees did not supplement their interrogatories as required by the July 22 Order and that the substance of the experts' testimony was not provided within thirty days of trial. Rule 166b(6)(b) provides:

> If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the *substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical,* but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

Tex.R.Civ.P. 166b(6)(b) (emphasis ours). In this case, appellees' supplemental interrogatories included the name, address, and telephone numbers of Drs. Fite and McKay and stated that they would provide expert testimony on the standard of care and medical treatment rendered to plaintiff (Roy Garcia). We conclude that appellees complied with Rule 166b(6)(b). The July 22 Order's requirement that Medical Networks further supplement Interrogatory No. 21 was satisfied by the experts' reports. Point three is overruled.

In a post-submission brief, appellees incorrectly contend that we cannot consider either the electronically recorded statement of facts, or the transcription therefrom because they were not timely filed. The Texas Supreme Court has adopted rules for Harris County concerning the making of a record of court proceedings by electronic recording. Rule [6] 2 provides that no stenographic record shall be required of any civil proceedings electronically tape recorded. Rules 3 and 3a provide that a statement of facts shall be a standard cassette recording. Rule 4 provides, in part, that the court recorder shall file the statement of facts with the court of appeals within fifteen days of the perfection of an appeal. In this case, the appeal was perfected on December 13, 1991. The sworn affidavit of Karen Miedrich, who was the trial court's official court recorder when this case was tried, states that:

> On December 17, 1991, I hand carried the statement of facts in the above-referenced cause to [the] First Court of Appeals in Houston, Texas. The statement of facts consisted of copies of the original cassette tape recordings of the entire trial proceedings, a typed copy of the logs of proceedings electronically recorded, and the volumes of exhibits. The trial of this cause was electronically recorded as authorized by the Rules of the Supreme Court, specifically Miscellaneous Docket No. 90–0017. A copy is attached hereto as Exhibit "A" of my affidavit. Pursuant to those rules I filed with the Clerk ·of the First Court of Appeals the statement of facts, as defined in the Miscellaneous Docket No. 90–0017 attached hereto as Exhibit "A", within 15 days from the perfection of the appeal. . . .

We consider the statement of facts timely filed as provided by Rule 4.

The trial court's judgment is AFFIRMED.

---

**6.** From this point, "Rule" refers to the Supreme Court rules for Harris County.