**Rommie PATTON, Appellant,**

v.

**SAINT JOSEPH'S HOSPITAL, Robert
E. Gloyna, M.D. and Raul G.
Puelma, M.D., Appellees.**

No. 2–93–241–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 9, 1994.

Rehearing Overruled Dec. 14, 1994.

---

John Holloway, Houston, for appellant.

Wallach, Jones & Moore, P.C., Randall D. Moore, Jennifer M. Andrews and Eric G. Ransleben, Fort Worth, for appellee Gloyna.

Cantey & Hanger, L.L.P., Carol J. Traylor, Evelyn R. Leopold, and Ken C. Cunningham, Fort Worth, for appellee Saint Joseph's Hosp.

Fielding, Barrett & Taylor, L.L.P., Tim G. Sralla, Fort Worth, for appellee Puelma.

Before LATTIMORE, WEAVER and DAY, JJ.

## OPINION

DAY, Justice.

Rommie Patton appeals from a take-nothing jury verdict in a medical malpractice case. We affirm.

On April 18, 1988, Rommie Patton went to Dr. Raul G. Puelma's office complaining of lower abdominal pain. Dr. Puelma performed a complete pelvic and abdominal examination. He found nothing. Dr. Puelma then sent Patton to St. Joseph's Hospital for a sonogram. On April 19, 1988, Dr. Robert E. Gloyna interpreted Patton's sonogram. He observed a complex right adnexal mass on the sonogram. Dr. Gloyna then made a report listing a dermoid as the primary consideration, but he also listed several other possibilities.

Dr. Puelma received Dr. Gloyna's report by telephone on April 19, 1988. The following day, Dr. Puelma received Dr. Gloyna's

written report. Patton then met with Dr. Puelma for her sonogram results. Dr. Puelma informed her of the complex mass and the possibility that it could be cancer. Furthermore, Dr. Puelma told Patton that the only way to determine exactly what the mass was would be to look inside her by means of a small abdominal incision.

On May 2, 1988, Patton again went to Dr. Puelma's office complaining of abdominal pain and vaginal spotting. Patton then decided to have surgery to determine the nature of the complex mass. The surgery took place on May 10, 1988, but no mass was found. Dr. Puelma did, however, remove Patton's appendix during the surgery.

After the surgery, Patton sued: (1) Dr. Puelma for fraud, negligence, gross negligence, lack of informed consent, and willful and negligent misrepresentation; (2) Dr. Gloyna for fraud, negligence, and gross negligence; and (3) St. Joseph's Hospital for fraud, negligence, gross negligence, misrepresentation, and informed consent. The trial court struck the informed consent claim against St. Joseph's Hospital.

Prior to beginning trial, the trial court heard several motions by the appellees to exclude two of Patton's expert witnesses because: (1) Patton failed to supplement her discovery responses, and (2) the experts were not qualified. The court excluded two of Patton's experts, Dr. Clarke and Dr. Scott, for Patton's failure to supplement her responses.

Patton still proceeded to trial with a radiology expert, Dr. Beall. After Patton's case-in-chief, the trial court granted full instructed verdicts for St. Joseph's Hospital and Dr. Gloyna and granted a partial instructed verdict for Dr. Puelma. The trial court submitted the claims of fraud and lack of consent against Dr. Puelma to the jury. The jury found in favor of Dr. Puelma on both issues.

In points of error one through four, Patton argues the trial court abused its discretion by: (1) striking the testimony of two of her expert witnesses on the basis that interrogatory responses were not supplemented, or alternatively, by denying her motion for a continuance so she could supplement; (2)

finding that good cause did not exist for her failure to supplement; (3) denying a trial on the merits by striking two of her expert witnesses; and (4) failing to consider less stringent sanctions. Rule 166b(6)(b) of the Texas Rules of Civil Procedure states:

If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

Tex.R.Civ.P. 166b(6)(b). Additionally, Rule 215(5) of the Texas Rules of Civil Procedure states:

A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists.

Tex.R.Civ.P. 215(5).

Rule 215(5) is a mandatory rule that operates as an automatic exclusion of evidence unless good cause is shown to excuse its imposition. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992); *see Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex.1990); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 395 (Tex.1989). A trial court can only admit the testimony of an expert witness if the offering party has either met its burden to supplement or shows good cause for not supplementing, but without a showing of good cause, the trial court has no discretion to admit testimony excluded by Rule 215(5). *Alvarado*, 830 S.W.2d at 914. Patton argues that we should look at the list of factors prescribed in *TransAmerican Natural Gas Co. v. Powell*, 811 S.W.2d

913 (Tex.1991) (orig. proceeding), to determine whether the punishment given—exclusion of two experts—fits the crime—failure to formally answer or supplement the interrogatories. Furthermore, Patton argues that *TransAmerican* should apply because the exclusion of two of her experts in this case constitutes a death penalty sanction, and *TransAmerican* defines what the analysis should be for the imposition of death penalty sanctions. *Id.* We disagree with Patton's arguments for applying *TransAmerican* in this case because *TransAmerican's* factors only apply to discretionary sanctions, not Rule 215(5) sanctions. To hold otherwise would clearly contradict the language in *Alvarado,* which states:

> The difficulty with [Rule 215(5) ] lies not so much in the requirement of strict adherence, but in the severity of the sanction it imposes for every breach. The consequences of the rule should not be harsher in any case than the vice the rule seeks to correct. The sole sanction should not be the exclusion of all evidence not properly identified in discovery; rather, as with other failures to comply with discovery, the trial court should have a range of sanctions available to it to enforce the rules without injustice. "The punishment should fit the crime." *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991).
>
> As written, however, Rule 215(5) prescribes a single sanction for failing to supplement discovery, and we are not free to disregard its plain language. Nor should we revise the rule by opinion. The Legislature has provided that notice be given before rules amendments become effective. TEX. GOV'T CODE [ANN.] § 22.004. In addition, this Court has structured the rules revision process to encourage advice and comment from the bench and bar, and from the public generally. Any revision in Rule 215(5) should be left to those processes.... While those processes are at work, we adhere to the language of [Rule 215(5) ] and our consistent precedent.

*Alvarado,* 830 S.W.2d at 915. If the trial court had excluded Patton's experts as a discretionary sanction for continuing discovery abuse under Rule 215(3), and not as an automatic Rule 215(5) exclusion, then *TransAmerican* would apply. It did not. Instead, the trial court excluded two of Patton's experts on the basis that Patton failed to supplement the interrogatories with the experts' opinions. Therefore, the only option available to the trial court if Patton failed to supplement appellees' interrogatories would be the exclusion of her experts unless she demonstrated good cause for her failure to supplement. TEX.R.CIV.P. 215(5).

■ Patton argues that furnishing the appellees with depositions and reports of Dr. Scott and Dr. Clarke constituted sufficient supplementation under the rules. We disagree. To support her argument, Patton cites *Soefje v. Stewart,* 847 S.W.2d 311 (Tex. App.—San Antonio 1992, writ denied). *Soefje,* however, is clearly distinguishable. In *Soefje,* the issue was whether supplementation that was: (1) not notarized, (2) not signed by the appellant, and (3) did not include the interrogatory question, but was filed as a supplement to interrogatories, constituted valid supplementation. *Id.* at 312. The issue in our case, however, is not whether something designated as a supplementation to the interrogatories is valid, because Patton never designated the reports and depositions as supplementation. *Soefje* is thus inapplicable.

Patton next claims that the case of *Garza v. Tan,* 849 S.W.2d 430 (Tex.App.—Corpus Christi 1993, no writ), allows a report of an expert to satisfy the supplementation requirement. We also disagree with her analysis of that case. In *Garza,* the appellant complained that the appellees failed to meet a court order requiring them to designate experts, to provide their reports, and to supplement the interrogatories before September 6, 1991. *Id.* at 433. The court's order included a requirement to supplement an interrogatory by reducing the experts' opinions to a tangible form. *Id.* The appellees provided a report of the experts' opinions to satisfy this order, but they provided it later than the date on the order. *Id.* The appeals court found that the report furnished to the appellant satisfied the court order to supplement the interrogatory because the order did not state what date the report had to be

produced. *Id.* It never found that the giving of a report constituted supplementation under Rule 166b(6)(b). *See id.* at 434. What the court found in regard to Rule 166b(6)(b) was that the appellees' supplemental interrogatory answer stating the name, address, and telephone numbers of the experts with a statement that these experts would provide testimony on the standard of care and medical treatment rendered was adequate. *Id.*

The issue before us is not whether a report of the experts' opinions was produced in time to satisfy a court order, but whether providing the depositions and reports of Dr. Clarke and Dr. Scott constituted a response to the appellees' interrogatories. *Garza* is thus inapplicable.

Rule 166b(6)(b) clearly requires a party to supplement its answers to an interrogatory requesting the opinion of an expert if that opinion has not been previously given in an interrogatory response. Tex.R.Civ.P. 166b(6)(b). We hold that without expressly designating a report or deposition as supplementation, Rule 166b(6)(b)'s supplementation requirement is not met.[1] Therefore, Patton failed to supplement appellees' interrogatories asking for the opinion of her experts.

■ Next, Patton argues that since the appellees cross-designated Dr. Scott and adopted his deposition as the substance of his testimony, then she should automatically be excused from supplementation because of *Ticor Title Ins. Co. v. Lacy,* 803 S.W.2d 265 (Tex.1991). In *Ticor,* however, the issue was whether one party who was on the same side of the lawsuit as another party could rely on that other party's supplementation or answers to discovery. *Id.* Patton argues this should be extended to mean that one party should be able to rely on an adverse party's supplementation. *Ticor* clearly did not stand for the proposition that a party could discharge a duty to supplement whenever an adverse party names someone as an expert, and we refuse to extend it to such an extent.

Therefore, under Rule 215(5), the trial court's only option was to exclude the testimony of Dr. Scott and Dr. Clarke unless Patton demonstrated good cause for her failure to supplement. Tex.R.Civ.P. 215(5).

■ A trial court has discretion to determine whether the offering party demonstrated good cause for failing to supplement. *Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 3 (Tex.1994) (*citing Alvarado,* 830 S.W.2d at 914). "Counsel should not be excused from the requirements of [Rule 215(5) ] without a strict showing of good cause." *Alvarado,* 830 S.W.2d at 915. Thus, the question for this court is whether the trial court's finding of no good cause was arbitrary and unreasonable, and made without any reference to any guiding rules or principles. *Bullock,* 870 S.W.2d at 3 (*citing Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986)).

■ Factors that alone do not show good cause include the following: (1) inadvertence of counsel, (2) lack of surprise, unfairness, or ambush, (3) uniqueness of the excluded evidence, and (4) the fact that a witness has been deposed. *Alvarado,* 830 S.W.2d at 915; *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992). All of these, however, are factors in the determination of whether good cause has been shown.[2] *Klekar v. Southern Pac. Transp. Co.,* 874 S.W.2d 818, 825 (Tex.App.—Houston [1st Dist.] 1994, writ requested). Furthermore, the combination of several of these factors might show good cause. *See Bynum,* 836 S.W.2d at 162. Therefore, we must determine whether the facts in this case demonstrate good cause to such an extent that the trial court abused its discretion in excluding Patton's experts.

■ In urging that the trial court abused its discretion, Patton first argues that appellees' cross-designations of Dr. Scott demonstrate good cause for her failure to supplement. The Supreme Court of Texas has not ruled on this issue. *See Bullock,* 870 S.W.2d

---

**1.** *See Garcia v. Allen,* 751 S.W.2d 236, 237 (Tex. App.—San Antonio 1988, writ denied). Plaintiff contended his deposition was a supplement to interrogatory answers that revealed two additional witnesses. The court found the deposition was not a supplement because it failed to disclose addresses of witnesses, and it failed to

expressly state the information in it was to be used as a supplement to answers. *Id.*

**2.** This list of factors is not intended to be exhaustive.

at 4. Additionally, a court of appeals also refused to decide this issue, but did hold that an opposing party's designation would be a factor in a good cause determination. *Klekar*, 874 S.W.2d at 826. Therefore, this is an issue of first impression for this court. We hold that the designation of a witness by an adverse party does not alone constitute good cause for failing to supplement interrogatory answers, but it is a factor in determining good cause. Otherwise, a party's duty to supplement would be discharged completely whenever an opposing party designates an individual as a witness. This would place an undue hardship upon the adverse party to prepare for any possible opinion that a non-designating party intended to solicit at trial. Furthermore, it completely undermines the purpose of the supplementation requirement of Rules 166b and 215(5).[3]

Patton next argues that *Johnson v. Berg*, 848 S.W.2d 345 (Tex.App.—Amarillo 1993, no writ), supports a finding of good cause. *Johnson*, however, is distinguishable. In *Johnson*, the court of appeals found good cause for failing to supplement interrogatories where the plaintiff's only expert witness was excluded. The exclusion in effect caused the case to be dismissed. In the instant case, the court excluded only two of Patton's three experts. She still went to trial with one expert.

In addition to this factual distinction, we also decline to follow the holding in *Johnson* because we disagree with its application of the *TransAmerican* standard to determine whether the exclusion of experts under Rule 215(5) is too harsh a sanction.[4] As stated

earlier, *TransAmerican* applies to discretionary sanctions, not Rule 215(5) sanctions. *See Alvarado*, 830 S.W.2d at 915. Since the trial court excluded Patton's two experts under Rule 215(5), *TransAmerican* and the other cases relied on by the *Johnson* court are inapplicable here.

Next, Patton argues that *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160 (Tex.1992), supports a finding of good cause in her case. *Bynum*, however, focused on the fact that the nondisclosed witness was also a party. Here, the witness is not a party, but an expert, therefore, *Bynum* is not persuasive.

Patton also argues that *Smart v. Winslow*, 868 S.W.2d 409 (Tex.App.—Amarillo 1993, no writ), set out various rules for imposing sanctions that the trial court in Patton's case allegedly violated. The *Smart* court, as it did in *Johnson*,[5] applied the *TransAmerican* standard[6] to a Rule 215(5) automatic exclusion. We disagree with applying the *TransAmerican* standard to a Rule 215(5) analysis. Furthermore, the *Smart* court concluded that the supreme court's statement in *Alvarado* that a trial court has the option to postpone the trial and sanction the attorney instead of striking the witness under Rule 215(5) means that a lesser sanction than exclusion exists under Rule 215(5). *Smart*, 868 S.W.2d at 416; *see Alvarado*, 830 S.W.2d at 915. We also disagree with that conclusion. The supreme court in *Alvarado* merely stated that a trial court could completely avoid Rule 215(5) by granting a continuance so that supplementation would occur at least thirty days before the actual trial. *Id.* at 915–16.

---

3. [O]ur goal in promulgating Rules 166b and 215(5) and our prior opinions interpreting these rules was to encourage full discovery of the issues and facts prior to trial so that parties could make realistic assessments of their respective positions.

 . . . .

 [T]he important underlying purpose of Rule 215(5) [is] that every litigant be accorded adequate notice of its opponent's proof.
 *Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 305 (Tex.1993).

4. *See TransAmerican*, 811 S.W.2d at 913. The trial court in *Johnson* analyzed the exclusion of the expert witness under the line of cases involving discretionary sanctions. *See* Tex.R.Civ.P. 215(3). According to those cases, a trial court

would abuse its discretion whenever a sanction exceeds the purpose of discovery. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex.1992). Thus, the *Johnson* court felt that since the defendant had not been ambushed or surprised, the automatic exclusion of Rule 215(5) was too severe. As stated in *Alvarado*, 830 S.W.2d at 913, these factors alone are not sufficient to find good cause. Therefore, the court in *Johnson* basically ignored, although it did distinguish, the supreme court's line of cases dealing with good cause, and instead chose to follow the line of cases dealing with discretionary sanctions.

5. 848 S.W.2d at 345.

6. 811 S.W.2d at 913.

The trial court could then impose sanctions under Rule 215(3) for the discovery abuse.[7] *Id.* Granting a continuance, however, is not a lesser sanction under Rule 215(5), but instead is a way to completely avoid Rule 215(5). Rule 215(5) as written has only one sanction available, the exclusion of the evidence unless good cause is shown. *See* TEX. R.CIV.P. 215(5). Thus, we decline to follow the *Smart* court's analysis.

What is still unclear after *Alvarado*, however, is whether a trial court abuses its discretion in denying a continuance to allow supplementation and avoid the application of Rule 215(5). Patton alternatively asserts this exact issue in point of error one. Patton, however, neither provides any argument nor cites any cases to support her point. When a party asserts an issue in a point of error, but does not provide argument or authority to support that point, then that point of error is waived. TEX.R.APP.P. 74(f); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied). Therefore, we decline to determine whether a trial court abuses its discretion by failing to grant a continuance to avoid the application of Rule 215(5).

In analyzing the record and all the arguments made by Patton for good cause, we fail to find sufficient evidence to show the trial court abused its discretion in not finding good cause. As stated in *Alvarado*, "To relax the good cause standard in Rule 215(5) would impair its purpose. Counsel should not be excused from the requirements of the rule without a strict showing of good cause." *Alvarado*, 830 S.W.2d at 915. Patton failed to show good cause for not supplementing the interrogatories. Her reliance on appellees' designation of Dr. Scott as an expert alone cannot meet the good cause requirement. Furthermore, providing the depositions and the reports do not meet the good cause requirement. Therefore, we overrule Patton's points of error one through four.

In point of error five, Patton argues that Rule 215(5)'s automatic exclusion of evidence is unconstitutional because it violates due process and equal protection of the law safeguards. Patton's only argument on this point involves quoting *TransAmerican*, 811 S.W.2d at 913. *TransAmerican*, however, deals only with imposing death penalty sanctions as a discretionary sanction under Rule 215(3). It does not apply to Rule 215(5). Thus, *TransAmerican* is not controlling. Additionally, Patton argues that *Miller v. Massey* addresses the constitutionality of Rule 215(5). While the court of appeals in *Miller* initially published their opinion,[8] they withdrew the publication order as of February 24, 1994. Thus, Patton cannot cite *Miller* as authority because it is an unpublished case. TEX.R.APP.P. 90(i). Therefore, we reject Patton's argument and overrule point of error five.

In point of error six, Patton argues the trial court erred in granting Dr. Puelma a partial instructed verdict on the issues of negligence, gross negligence, misrepresentation, and informed consent. A directed verdict is proper only under limited circumstances: (1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence conclusively proves the movant is entitled to judgment as a matter of law; or (3) the evidence is legally insufficient to raise an issue of fact. *Texas Employers Ins. Ass'n v. Duree*, 798 S.W.2d 406, 408 (Tex.App.—Fort Worth 1990, writ denied) (op. on reh'g); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *see also* TEX. R.CIV.P. 268.

In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Porterfield v. Brinegar*, 719 S.W.2d 558, 559 (Tex.1986);

---

7. According to a footnote in *Alvarado*:
 [W]e do not encourage trial courts to disregard or circumvent Rule 215(5). We simply observe that by postponing trial to allow compliance with the rule accompanied by appropriate sanctions, short of the exclusion of testimony, for any discovery abuse, the trial courts are fully empowered to effectuate the purposes of the rule without working an injustice.
 *Alvarado*, 830 S.W.2d at 916 n. 5.

8. 862 S.W.2d 679 (Tex.App.—Tyler 1993).

*White v. Southwestern Bell Tel. Co., Inc.,* 651 S.W.2d 260, 262 (Tex.1983). Furthermore, we must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White,* 651 S.W.2d at 262. If there is any such evidence on any theory of recovery, a determination of that issue is for the jury. *Id.*

In a medical malpractice action, expert testimony is required to prove negligence or gross negligence unless the form or mode of treatment is a matter of common knowledge, or the matter is within the experience of a layperson. *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977); *Shook v. Herman,* 759 S.W.2d 743, 747 (Tex.App.—Dallas 1988, writ denied). Neither exception applies in this case, and Patton failed to establish by expert testimony what the standard of care was for a general surgeon and that Dr. Puelma deviated from that standard of care. Because of this, Patton failed to establish two essential elements of her case. Therefore, the trial court's granting of a directed verdict on the issues of negligence and gross negligence was proper.

Patton next argues that evidence existed showing a misrepresentation so that an instructed verdict was improper on that point. The trial court, however, did not grant an instructed verdict on the issue of misrepresentation based on no evidence. Instead, the trial court based its directed verdict on the fact that the misrepresentation claim was subsumed by the informed consent provisions of the Medical Liability and Insurance Improvement Act, Subchapter F of TEX.REV. CIV.STAT.ANN. art. 4590i (Vernon Pamph. 1994). Patton fails to argue or cite any case or law showing that the misrepresentation claim was not preempted by article 4590i, so she has waived that portion of her point of error. *See* TEX.R.APP.P. 74(f).

Finally, while Patton mentions informed consent in her point of error, she fails to make any argument or cite any cases, law, or facts associated with informed consent to support her point of error. In fact, she does not address the informed consent issue until points of error eighteen and nineteen, so we will not address it until then. Therefore, since Patton failed to supply any argument on why informed consent was improper to Dr. Puelma, she waived that issue for point of error six. *See* TEX.R.APP.P. 74(f). We overrule point of error six.

In point of error seven, Patton argues that the trial court erred in granting Dr. Gloyna's motion for a directed verdict.[9] To support her point, Patton claims that evidence existed to show her surgery was caused by Dr. Gloyna's: (1) negligent diagnoses of the sonogram, (2) listing a dermoid as a primary consideration, or (3) in failing to recommend a repeat sonogram.

In reviewing the evidence, we find there is no evidence showing that Dr. Gloyna negligently interpreted the sonogram. Both Dr. Gloyna and Patton's radiology expert, Dr. Beall, testified that a radiologist's job includes listing possible diagnoses of the images. Dr. Gloyna did this. Additionally, Dr. Beall agreed with the possibilities listed by Dr. Gloyna. Therefore, Patton presented no evidence showing that Dr. Gloyna negligently interpreted the sonogram.

Patton next argues that Dr. Gloyna negligently listed a dermoid as the primary possibility. While radiologists often list possible diagnoses in the order of the most likely to occur, there appears to be no accepted standard in the field. Patton argues that Dr. Beall's testimony that he would not have listed a dermoid first creates a fact issue on whether Dr. Gloyna was negligent in listing a dermoid first. Dr. Beall, however, also testified:

Q: Do you as a radiologist feel that this is a failure to exercise ordinary care in reporting the sonogram to say that they reflect a dermoid as being of a primary consideration?

A: Not really. I would interpret it exactly the way I just felt.

Furthermore, Dr. Beall stated that listing a dermoid as a primary consideration was not unreasonable, and that he sometimes raised a consideration from the bottom of the list to a stronger diagnosis to get the physician's at-

9. The standards of review for this point are the same as point of error six.

tention. Therefore, Patton failed to present evidence on whether Dr. Gloyna negligently listed a dermoid as a primary consideration.

 Finally, Patton argues that Dr. Gloyna's failure to recommend a repeat sonogram constituted negligence as a matter of law. Patton fails to cite any statute, rule, or case law that holds a radiologist's failure to recommend a repeat sonogram constitutes negligence as a matter of law. Furthermore, none of Patton's experts' testimony established what the exact standard of care was regarding a repeat sonogram or that Dr. Gloyna breached that standard. While Dr. Beall did testify it would have been acceptable or standard in radiographic practices for Dr. Gloyna to suggest another sonogram, he also stated that he rarely would indicate on a report that additional studies were necessary because it would make him look like a self-referring radiologist. Additionally, Dr. Beall stated that suggesting another sonogram is not a matter of routine for radiologists. Finally, Dr. Beall stated that the ultimate decision-maker for additional tests is not the radiologist, but the referring physician. This testimony as a whole fails to establish any specific standard of care for recommending repeat sonograms or that Dr. Gloyna breached any such standard. Therefore, the trial court correctly granted an instructed verdict for Dr. Gloyna. We overrule Patton's point of error seven.

In point of error eight, Patton argues the trial court erred in granting St. Joseph Hospital's instructed verdict. Patton claims the hospital is liable for:

(1) Dr. Gloyna's conduct based on agent, servant, employee, borrowed employee, or ostensible agency theories;

(2) Allowing surgery without an OB–GYN consultation;

(3) Failing to set procedures for surgery without written consent;

(4) Allowing surgery without a diagnostic laparoscopic procedure to evaluate a necessity for general surgery;

(5) Permitting an appendectomy without written consent; and,

(6) Permitting Dr. Puelma to perform female surgery when he was not knowledgeable, trained or experienced in the diagnosis, care or treatment of female disorders.

First, Patton argues that St. Joseph Hospital should be held liable for the negligent conduct of Dr. Gloyna under agency law. We, however, upheld the trial court's instructed verdict for Dr. Gloyna. A determination of whether a relationship between St. Joseph's Hospital and Dr. Gloyna existed is pointless because of Dr. Gloyna's directed verdict. Obviously, St. Joseph's Hospital could not be held liable for Dr. Gloyna's negligent conduct if Dr. Gloyna's conduct was not negligent. Therefore, this portion of Patton's eighth point of error is overruled.

Second, Patton argues that she could not prove a prima facie case of negligence against the hospital because its peer review and investigative policing records were sealed under Tex.Rev.Civ.Stat.Ann. art. 4447d (Vernon Supp.1989).[10] Patton claims that article 4447d is unconstitutional because it deprives a victim of the necessary information to establish a prima facie case of negligence on the part of a hospital in failing to police its staff. After reviewing the record, we find no evidence that Patton ever raised this issue in the trial court. Accordingly, Patton waived the issue by not preserving error. *See* Tex.R.App.P. 52(a).

In her final argument under point of error eight, Patton claims the court erroneously sustained all objections to exclude the necessary evidence to establish the hospital's duty to police its staff, to prevent unnecessary surgery, to prevent surgery not specified in consent forms given to the hospital, and to require consultation with an OB–GYN specialist. Patton, however, provides no basis to refute the trial court's sustaining of the objections. In fact, her only argument is that the trial court should not have excluded the evidence because the evidence excluded

---

10. This argument, however, is moot since the legislature repealed article 4447d as of September 1, 1989. Acts 1989, 71st Leg., ch. 678, § 13(1), eff. Sept. 1, 1989. The section on which

the trial court based the protective order was Tex.Rev.Civ.Stat.Ann. art. 4495b, § 5.06 (Vernon Pamph.1994).

would have helped prove the issues complained of. As stated earlier, if a party complains of an issue in a point of error, but fails to argue or provide any authority for that point of error, then there is no issue for this court to consider. See TEX.R.APP.P. 74(f). Therefore, we must assume that the trial court's exclusion of the evidence was proper.

Since the trial court's exclusion of the evidence was proper, then Patton by her own brief admits that she did not prove the hospital had a duty to police its staff, to prevent unnecessary surgery, to prevent surgery not specified in consents given the hospital, and to require consultation with an OB–GYN specialist by general surgeons. Without showing the hospital had a duty, Patton failed to prove an essential element of her cause of action. Therefore, the directed verdict was proper. We overrule point of error eight.

■ In points of error nine and ten, Patton argues the trial court abused its discretion in denying a new trial because the jury's finding of no fraud by Dr. Puelma is against the great weight of the evidence or the evidence shows fraud as a matter of law. When an appellant attacks the legal sufficiency of an adverse answer to a finding on which the appellant had the burden of proof, the Texas Supreme Court has stated that the appellant must, as a matter of law, overcome two hurdles. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is evidence, the challenge must fail. *Id.* Second, if there is no evidence to support the fact finder's answer, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

■ Conversely, in reviewing a point of error asserting that an answer is against the great weight and preponderance of the evidence, we must consider and weigh all the evidence, including the evidence that tends to prove the existence of a vital fact, as well as evidence that tends to disprove its existence. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.

1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering all the evidence, if a finding is so contrary to the great weight and preponderance of the evidence so as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

To support these points of error, Patton relies on six allegedly undisputed facts. A basic review of the case, however, shows that: (1) Patton never conclusively established these facts, and (2) Patton failed to present enough evidence to state even a prima facie case for fraud.

■ In her first undisputed fact, Patton asserts that Dr. Puelma told Patton that the sonogram reflected a dermoid or complex mass that could be malignant or cancer, when he did not know, nor could he have known, Patton had cancer. While Dr. Puelma did tell Patton that the mass might be cancer, his statement corresponded directly with what Dr. Gloyna's radiology report stated. Furthermore, Dr. Puelma testified he told Patton that cancer was one of the possibilities, not the only possibility. This statement is by no means inaccurate or fraudulent.

■ Patton then asserts in undisputed fact two that Dr. Puelma told her that she only had cancer, and it required surgery. Dr. Puelma's testimony, however, contradicts this. He claims he told Patton she might have cancer, but she might have another condition as well, and she could wait a couple of weeks and get another sonogram if the pain disappeared to make sure the mass had disappeared. Furthermore, Dr. Puelma indicated Patton chose to go to surgery immediately. Obviously, the evidence was controverted, and the jury chose to believe Dr. Puelma's statements instead of Patton's.

Next, Patton claims Dr. Puelma testified he would make a small incision in her abdomen and look inside her before proceeding to

major surgery. Patton claims this means "band-aid surgery," commonly referred to as a laparoscopy, involving an extremely small incision in the navel. Dr. Puelma, however, testified he did not tell Patton: (1) the incision would be in the navel area, (2) he was going to do a laparoscopy, or (3) that he was going to do "band-aid surgery" through the navel. Instead, Dr. Puelma testified he told Patton he would make a small incision in her lower abdomen. Again, the evidence was controverted, and the jury chose to believe Dr. Puelma's testimony over Patton's.

█ Next, Patton argues Dr. Puelma admitted he ignored the hemorrhagic cyst suggestion by the radiologist when he told Patton there was no alternative to surgery. Dr. Puelma, however, testified:

> I told her that exploration was not urgent and we could defer for some time to follow the evolution of the pain. She was still having pain, and that was very important. And I told her that we would wait to see what happened with that pain before making any other decision. If the pain would disappear, then, yes, we need to repeat the sonogram, but if the pain didn't disappear we have to go in with exploration anyway.
>
> Her answer was, "I'm too nervous about this thing. I'm too worried. I cannot stand it anymore. Let's get it over. Let's find out what I have."

Again, there is controverted evidence on this point, and the jury chose to believe Dr. Puelma. Additionally, Dr. Puelma's statements were consistent with the facts from Dr. Gloyna's report and do not show fraud.

Finally, Patton argues that a repeat sonogram on the day of surgery would have shown no need for surgery. This in no way shows misrepresentation by Dr. Puelma because there was a number of potential causes of the mass shown by the sonogram, and furthermore, Dr. Puelma told Patton the mass might resolve itself.

After reviewing the evidence, we hold that sufficient evidence exists to support the jury's finding, and that the trial court did not abuse its discretion in refusing to grant a new trial on Patton's fraud claim. Likewise,

after analyzing all the evidence, we find the jury's verdict was not against the great weight and preponderance of the evidence.

The verdict was also not wrong as a matter of law because Patton failed to offer any evidence on the following elements of fraud: (1) that a misrepresentation was made with knowledge of its falsity or made recklessly without knowledge of its truth, and (2) that Dr. Puelma made the misrepresentation with the intention to induce Patton to rely on it.[11] Without presenting evidence to prove these elements, Patton failed to establish a prima facie case of fraud. Thus, the jury's verdict was not wrong as a matter of law. We overrule points of error nine and ten.

█ Under points of error eleven and twelve, Patton asserts the trial court abused its discretion in denying a new trial because the jury's finding that Dr. Puelma performed a laparotomy procedure with the patient's consent was wrong as a matter of law or was against the great weight and preponderance of the evidence. Our standards of review of these points are the same as points of error nine and ten.

Patton signed a disclosure and consent form before surgery. According to Dr. Puelma and the consent form, Patton both consented to a laparotomy and to Dr. Puelma performing a different procedure if, based on his professional judgment, different conditions became apparent during surgery that required different procedures. Furthermore, the language in the consent form directly above Patton's signature stated that by signing the form she certified: (1) the form was explained to her, (2) she read it, and understood it, and (3) *all the blank spaces were filled in.* Patton, however, claims there was no handwriting in the blanks on the first page of the form when she signed it. Clearly, the jury could choose whom to believe, and the jury chose not to believe Patton. Furthermore, since Patton signed the consent statement allowing for the possibility of additional procedures, there exists grounds for the jury to determine Patton expressly consented to the laparotomy procedure. Accordingly, we hold the jury's find-

11. *T.O. Stanley Boot Co. v. Bank of El Paso,* 847　S.W.2d 218 (Tex.1992).

ing was not against the weight of the evidence or was wrong as a matter of law. We overrule points of error eleven and twelve.

■ In points of error thirteen and fourteen, Patton claims the trial court abused its discretion in denying a new trial on matter of law and great weight points because the jury refused to find that Dr. Puelma removed Patton's appendix without her consent or implied consent. As before, we will apply the same standards of review as we did in points of error nine through twelve.

Under these standards, Patton again failed to conclusively establish her claim of a lack of consent. Patton based her assertion on the fact that Dr. Puelma admitted he did not discuss the removal of Patton's appendix because he did not consider it to be the cause of her pain. According to Dr. Puelma, however, he decided during surgery, based on his professional judgment, that her appendix was the cause of her pain. Accordingly, he removed her appendix.

The consent form signed by Patton allows for this possibility when it stated that Patton consents to procedures, other than those expressly mentioned, if Dr. Puelma deems it advisable in his professional judgment. The jury clearly could have determined that she either did or did not expressly consent to the removal of her appendix by signing the consent form. It obviously chose to believe she did consent.

■ Patton, however, argues that the jury question was an implied consent question because implied consent was defined directly after the question. We disagree. The question stated:

Did Dr. Puelma, without Rommie Patton's consent, remove the appendix of Rommie Patton?

Consent is implied by law if the patient is unconscious or otherwise unable to give express consent and an immediate surgical procedure is necessary to preserve her life or health.

The question does not state "implied consent," it just states "consent." Inclusion of the definition of implied consent did not limit the question to implied consent, but just defined one of the possible ways the jury

could find consent. Therefore, since Patton signed the consent statement allowing for the possibility of additional procedures, there exists sufficient evidence for the jury to determine Patton expressly consented. We overrule points of error thirteen and fourteen.

In points of error fifteen, sixteen, and seventeen, Patton complains that the trial court abused its discretion by refusing to submit her questions on negligence, gross negligence, fraud, and negligent misrepresentation to the jury. Since we held the directed verdicts on the issues of negligence, gross negligence, and negligent misrepresentation were proper, then clearly no error exists in the trial court's refusal to submit jury questions on these issues.

The court, however, did submit a question to the jury on fraud, but Patton failed to assert in her brief that anything was wrong with the question. As stated earlier, if a point of error raises an issue, but the party fails to present any argument or authority on that issue, then the party waives that issue. See Tex.R.App.P. 74(f). We overrule points of error fifteen, sixteen, and seventeen.

Patton asserts in points of error eighteen and nineteen that the trial court abused its discretion in refusing to submit questions to the jury on informed consent and in improperly commenting to the jury that informed consent was not in the case. To establish a valid claim of lack of informed consent, Patton must establish all the elements of lack of informed consent, including "establish[ing], on the merits, that [she] developed the non-disclosed risks or hazards, or, stated another way, that [she] was injured by the occurrence of the risk of which [she] was not informed." *Greene v. Thiet,* 846 S.W.2d 26, 31 (Tex. App.—San Antonio 1992, writ denied) (*citing Jones v. Papp,* 782 S.W.2d 236, 241 (Tex. App.—Houston [14th Dist.] 1989, writ denied)); *Hartfiel v. Owen,* 618 S.W.2d 902, 905 (Tex.Civ.App.—El Paso 1981, writ ref'd n.r.e.); *see* Tex.Rev.Civ.Stat.Ann. art. 4590i, § 6.02 (Vernon Pamph. 1994). Patton, however, never asserts or proves that she suffered from any alleged undisclosed risks of the surgery.

■ What Patton does argue is that Dr. Puelma and St. Joseph's Hospital are liable because Dr. Puelma misdiagnosed her condition, performed an unnecessary surgery, and then removed her appendix without ever informing her that he would remove her appendix. First, the removal of Patton's appendix in this case involves a conventional consent issue, not an informed consent issue, because no damage from an undisclosed risk was involved. Because we have already addressed consent in the removal of Patton's appendix, we will not readdress it here. Second, under Patton's argument, she would want this court to hold a doctor liable under an informed consent theory whenever a patient is misdiagnosed and an unnecessary surgery is performed. The Medical Act, however, does not provide that.[12]

■ While misdiagnosis and mistreatment might constitute negligence, it does not constitute lack of informed consent. *Marling v. Maillard*, 826 S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Brown v. Armstrong*, 713 S.W.2d 725, 727 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Thus, Patton failed to either plead or offer any evidence on an essential element of an informed consent claim. Consequently, the court properly granted instructed verdicts on the issue of informed consent in Patton's case. Therefore, since informed consent was not an issue in the case, the trial court properly refused to submit Patton's questions on informed consent to the jury.

Patton, however, also argues that the trial court improperly commented on the issue of informed consent. This claim lacks any merit since the trial court ruled pretrial that informed consent was not an issue in this case. Furthermore, the exchange Patton complains of between the court and Mr. Holloway, Patton's attorney, was as follows:

*MS.* [sic] HOLLOWAY: Your Honor, at this point I need to object to that question

... since we're not dealing with any informed consent issues. [Emphasis added.]

MR. HOLLOWAY: Your Honor, again, informed consent issue is in this case from the beginning, in the middle, and will be in at the end. The fact of whether or not she received sufficient information to make an intelligent election to either accept or reject the surgery is a matter that the Court must submit to this jury under the pleadings.

THE COURT: That's not informed consent. I sustain the informed consent objection.

MR. HOLLOWAY: ... I object, and it's an improper comment by the Court ... I move for a mistrial.

....

THE COURT: ... Second of all, you must separate the subject of consent from informed consent, and you yourself know that the informed consent issues have been resolved prior to trial. That's the objection that I sustained, not the objection, if there was one, with respect to conventional consent.

MR. HOLLOWAY: I'm sorry, Your Honor. I didn't understand that. I apologize, and we'll move on.

After the exchange, Patton's counsel never received a ruling on his motion for a mistrial, and in fact, he effectively withdrew his motion by his statements above. Therefore, Patton waived any error in the denial of the motion for a mistrial.

Additionally, Patton cites only part of the above dialogue to support her point of error that the comment was improper. No other argument is made on why it is improper. As stated numerous times in this opinion, when a party presents an issue in a point of error, but fails to make any argument or provide any authority to support the point of error, then the party waives that point of error.

12. In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider,

the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 6.02 (Vernon Supp.Pamph.1994).

*See* TEX.R.APP.P. 74(f). Therefore, we overrule points of error eighteen and nineteen.

Finally, because we found the trial court properly excluded Dr. Scott as an expert witness in point of error two, we decline to rule on Dr. Gloyna's and St. Joseph Hospital's cross-point that asserted Dr. Scott should have been excluded since Patton failed to adequately establish his qualifications or predicate his opinions.

We affirm the judgment of the trial court.